2002 SD 110

**Arlene COHEN, Claimant and Appellant,**

v.

**CITY OF PIERRE, South Dakota and Department of Labor, State of South Dakota, Appellees.**

No. 21770.

Supreme Court of South Dakota.

Considered on Briefs May 28, 2002.

Decided Aug. 28, 2002.

Patricia R. DeHueck of DeHueck Law Office, Pierre, for claimant and appellant.

John Brown of Riter, Mayer, Hofer, Wattier & Brown, Pierre, for appellee, City of Pierre.

Drew C. Johnson, Aberdeen, for appellee Department of Labor.

PER CURIAM.

[¶ 1.] Arlene Cohen appeals a circuit court order affirming the South Dakota Department of Labor's denial of her claim for unemployment insurance benefits. We affirm.

## FACTS

[¶ 2.] In May 1998, the City of Pierre hired Cohen to run its library. As library director, Cohen answered to the library board, a volunteer organization appointed by the Mayor. The board had authority to hire and fire Cohen and to vary her level of control over the library.

[¶ 3.] When Cohen was hired, she made it clear that she would be making changes in the operation of the library. As those changes unfolded, Cohen encountered resistance with the library staff. Meetings took place at different stages between the board, Cohen and library staff members in various efforts to work out the problems that developed. Compounding these problems was the fact that the library was closed in the summer of 1999 for asbestos removal. Despite the closure, Cohen and her staff continued to work out of their homes and at temporary offices in city hall.

[¶ 4.] In the late summer of 1999, the board hired a professional facilitator to meet with Cohen and her staff in another effort to work out their differences. Before the meeting could take place, Cohen contacted the board president on Sunday, September 5, 1999 and informed the president that she was resigning effective October 1, 1999. The president then contacted all of the members of the library board, informed them of Cohen's resignation and planned a board meeting for the following Friday, September 10, 1999.

[¶ 5.] On Monday, September 6, 1999, the Labor Day holiday, Cohen again contacted the board president. At that time, Cohen advised that she wished to rescind her resignation and that she would not resign until after securing alternative employment. Cohen then returned to work on Tuesday, September 7.

[¶ 6.] Despite Cohen's attempt to withdraw her resignation, the board met as planned on Friday, September 10 and voted to accept it. The board further determined that it would pay Cohen through October 1, but that it would place her on administrative leave until that time. Cohen was notified of these decisions in a letter hand delivered to her by the board president on September 13. The letter further advised Cohen of the arrangements for her to return city property to the city and for her to obtain any of her own property from the library.

[¶ 7.] Cohen filed a claim for unemployment insurance benefits on October 7, 1999. Her claim was denied on the basis that she voluntarily quit her employment with the library without good cause. Cohen filed an inter-departmental appeal of the denial which was affirmed by an agency hearings examiner. Cohen then filed an appeal with the South Dakota Secretary of Labor who also affirmed the denial of benefits. An appeal to circuit court followed. On November 6, 2000, the circuit court entered its final order affirming the denial of benefits. Cohen now appeals to this Court.

## ISSUE

[¶ 8.] **Did the Department of Labor err in determining that Cohen voluntarily quit her employment?**

[¶ 9.] The unemployment insurance law provides for a disqualification from receiving benefits for persons who voluntarily quit their employment without good cause or who are discharged for work-connected

misconduct. *Reetz v. Lutheran Health Systems*, 2000 SD 74, ¶ 9, 611 N.W.2d 230, 233. Cohen argues that the department of labor erred in determining that she voluntarily quit her employment and asserts instead that she was discharged when the library board refused to allow her to withdraw her resignation. Contending that the city failed to establish any misconduct as cause for her discharge, Cohen further argues that the department erred in denying her claim for unemployment insurance benefits.

■ [¶ 10.] This Court's standard of review in unemployment insurance cases is set forth in *Weeks v. Valley Bank*, 2000 SD 104, ¶ 8, 615 N.W.2d 179, 182:

We review administrative decisions in the same manner as the circuit court. Factual findings may be overturned only if they are found to be "clearly erroneous" after all the evidence has been considered. The findings will not be disturbed unless we are left with a definite and firm conviction a mistake has been made. Conclusions of law, as well as mixed questions of fact and law that require the application of a legal standard, are fully reviewable. (citations omitted).

Whether a person has been discharged or voluntarily quit their employment within the meaning of the unemployment insurance law is a mixed question of law and fact which this court reviews de novo. *See S.D. Stockgrowers Ass'n v. Holloway*, 438 N.W.2d 561, 563 (S.D.1989)(whether quitting employment after notice of discharge but prior to effective date of discharge is a discharge or voluntary quit under unemployment insurance law is mixed question of law and fact subject to de novo review).

■ [¶ 11.] There is a division of authority on the issue of whether a separation from employment after an unsuccessful attempt to withdraw a resignation constitutes a voluntary quit or a discharge under the unemployment insurance law. As set forth in Francis M. Dougherty, Annotation, *Eligibility for Unemployment Compensation Benefits of Employee Who Attempts to Withdraw Resignation Before Leaving Employment*, 1985 WL 287648, 36 A.L.R.4th 395, 396 (1985):

Unemployment compensation acts commonly provide that an employee who voluntarily leaves his employment without good cause is not entitled to unemployment compensation benefits. "Voluntarily" has been held to mean "of one's own motion," or "of one's own accord" and it has been said that the phrase "good cause" must be so interpreted that the fundamental purpose of the legislation will not be destroyed.

Clearly, if an employee resigns entirely of his own volition without any compulsion by way of company rule or policy, or contract or agreement, he leaves his employment voluntarily, without good cause, and is not entitled to unemployment benefits. A problem is presented, however, when an employee who has voluntarily submitted notice of his intent to resign seeks to withdraw the resignation before the termination becomes effective. Obviously no problem is presented if the withdrawal is accepted but in those cases in which the attempted withdrawal was rejected, the courts reached conflicting results concerning the eligibility of the employee for unemployment compensation benefits.

Some courts considering this issue have determined that the employee is entitled to benefits, reasoning that the refusal to accept the withdrawal of resignation rendered the termination involuntary. *Most courts, however, have denied unemployment benefits on the ground that there was a voluntary termination of*

*employment.* One jurisdiction has taken the unique position that the employee is eligible for benefits if he can show that the employer has taken no steps to replace him between the time the resignation notice was tendered and the time the employee sought to withdraw the resignation. (emphasis added).

[¶ 12.] Noting the foregoing division of authority, the Iowa Court of Appeals followed the majority rule in *Langley v. Employment Appeal Bd.,* 490 N.W.2d 300, 303 (Iowa Ct.App.1992) observing:

> [T]he majority rule is most consistent with the intent of our unemployment statute. While the statute is to be construed liberally, its underlying purpose is to minimize the burden placed upon the employee who is unemployed involuntarily, through no fault of his or her own. We cannot say [the claimant here] is unemployed through no fault of her own. It was her "own action of resignation which set in motion the chain of events which ultimately resulted in [her] unemployment."
>
> > The employee should assume the responsibility of making sure he knows what he is doing before he decides to take such drastic action as giving the employer a notice to quit. The burden should rest with the employee who initiated the action by giving the initial notice and who in every real and practical sense is the moving party, try as he may to reverse the roles. It seems to us that it would be a distortion of reason and common sense to hold under these circumstances the employer is the moving party and that the severance of the employment was [in]voluntary.
>
> [*Rabago v. Unemployment Ins. Appeals Bd.,* 84 Cal.App.3d 200, 207–08, 148 Cal. Rptr. 499, 504 (1978)](some citations omitted).

[¶ 13.] This Court has also followed the view that the purpose of the unemployment insurance law is to combat involuntary unemployment by providing benefits to persons unemployed through no fault of their own. *See Reetz,* 2000 SD 74 at ¶ 13, 611 N.W.2d at 234; *John Morrell & Co. v. Dept. of Labor,* 460 N.W.2d 141, 143 (S.D.1990)(unemployment reserves to be used for the benefit of persons unemployed through no fault of their own). Here, as observed in *Langley, supra,* it was Cohen's own action that set in motion the chain of events that ultimately resulted in her unemployment. Prior to her resignation, the library board gave Cohen positive job evaluations. With regard to Cohen's problems in dealing with her employees, the board made every effort to work with Cohen and her staff to resolve the differences between them. The board even went so far as to retain an outside facilitator to assist in efforts toward reconciliation. It was Cohen who rebuffed these efforts by resigning.

[¶ 14.] Based upon the foregoing, Cohen has failed to prove that the department of labor erred in determining that Cohen voluntarily quit her employment without good cause. Likewise, Cohen is disqualified from receiving unemployment insurance benefits under these circumstances. *See Reetz, supra.*

[¶ 15.] Affirmed.

[¶ 16.] GILBERTSON, Chief Justice, and SABERS, AMUNDSON and KONENKAMP, Justices, participating.

[¶ 17.] ZINTER, Justice, disqualified.