2003 SD 67

**Glenford YELLOW ROBE, Appellant,**

v.

**Appeal from the BOARD OF TRUST-
EES OF THE SOUTH DAKOTA RE-
TIREMENT SYSTEM, Appellee.**

No. 22392.

Supreme Court of South Dakota.

Considered on Briefs Jan. 13, 2003.

Decided June 4, 2003.

Marcia Whiting, Rapid City, South Dakota, Attorney for Appellant.

Wade A. Hubbard, South Dakota Retirement System, Pierre, South Dakota, Attorney for Appellee.

GORS, Circuit Judge.

[¶ 1.] Glenford Yellow Robe (Yellow Robe) applied for and was denied disability benefits by the South Dakota Retirement System (SDRS). Yellow Robe appealed and the circuit court affirmed the SDRS

denial of disability. Yellow Robe appeals and we reverse.

## FACTS

[¶ 2.] Yellow Robe joined the Rapid City Police Department (Police Department), as a police officer, on February 1, 1985. On April 5, 1985, Yellow Robe obtained his law enforcement certification and became a Class B member of SDRS.

[¶ 3.] In September 1987, Yellow Robe injured his right knee while performing his duties as a police officer. The injury required surgery. Yellow Robe was put on temporary disability until January of 1989, at which time he returned to light duty with the Police Department. In 1990, Yellow Robe returned to full duty, but his physician would not release him to perform patrol duty. Thereafter, Yellow Robe tested and qualified for a detective's position with the Police Department.

[¶ 4.] While employed as a detective, Yellow Robe's right knee continued to bother him and his left knee also began to bother him. In June 1995, Yellow Robe failed to complete the required firearms qualification course because of his knee trouble. In addition, Yellow Robe re-injured his knee while trying to complete the course and again underwent knee surgery in July 1995. Two weeks after his surgery, Yellow Robe's physician allowed him to return to light duty with the Police Department. Yellow Robe was assigned a partial disability rating of 25%.

[¶ 5.] On October 25, 1995, Yellow Robe met with Police Department Captain Tieszen and Personnel Director Jack Teems. Yellow Robe was told that if his physician did not release him to full duty by December 31, 1995, he would not be able to continue on light duty as a detective. Yellow Robe was not released to full duty by his physician and consequently went on extended sick leave. It was clear that Yellow Robe would be terminated at the end of his sick leave.

[¶ 6.] After Yellow Robe started sick leave, Chief of Police Hennies created the position of license compliance officer for the Police Department. The position consisted primarily of office work and the license compliance officer was not required to pass the firearms qualifications test. The license compliance officer is a civilian employee of the Police Department and is a Class A member of SDRS.

[¶ 7.] Chief Hennies created the license compliance officer position with Yellow Robe in mind. The position was advertised, but an employee of the Rapid City Personnel Office telephoned Yellow Robe at home and informed him of the job opening. He was told that he should apply for the job and that if he did not take the job he would lose his retirement benefits. Yellow Robe was offered and accepted the job on May 1, 1996.

[¶ 8.] On the same day that Yellow Robe accepted the job, SDRS was notified that Yellow Robe had been reclassified from a Class B member to a Class A member. All of his medical and life insurance benefits, unused annual leave, and longevity benefits were transferred without disruption. On May 6, 1996, Yellow Robe applied for SDRS Class B disability benefits. Thereafter, on June 18, 1998, his disability benefits request was denied for the reason that his contributory service had not ended.

## STANDARD OF REVIEW

[¶ 9.] SDCL 1–26–36 governs the review of administrative law decisions and provides:

The court shall give great weight to the findings made and inferences drawn by an agency on question of fact. The court may affirm the decision of the

agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in light of the entire evidence in the record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

In accordance with this statute, we review questions of fact under the clearly erroneous standard. *Wendell v. South Dakota Dept. of Transp.,* 1998 SD 130, ¶ 5, 587 N.W.2d 595, 597. Findings of fact are clearly erroneous when the reviewing court has a definite and firm conviction that a mistake has been made. *Goebel v. Warner Transp.,* 2000 SD 79, ¶ 10, 612 N.W.2d 18, 21. "Conclusions of law, as well as mixed questions of fact and law that require the application of a legal standard, are fully reviewable." *Cohen v. City of Pierre,* 2002 SD 110, ¶ 10, 651 N.W.2d 265, 267 (quoting *Weeks v. Valley Bank,* 2000 SD 104, ¶ 8, 615 N.W.2d 179, 182).

■ [¶ 10.] Construction of statutes, *Bergee v. South Dakota Bd. of Pardons and Paroles,* 2000 SD 35, ¶ 4, 608 N.W.2d 636, 638 (citing *State v. Shadbolt,* 1999 SD 15, ¶ 10, 590 N.W.2d 231, 233), and rules, *Island v. Department of Corrections,* 1996 SD 28, ¶ 8, 545 N.W.2d 201, 203; *Nelson v. South Dakota Bd. of Dentistry,* 464 N.W.2d 621 (S.D.1991), is a question of law reviewed de novo.

## DECISION

■ [¶ 11.] The Hearing Examiner found that Yellow Robe qualified for disability as prescribed by ARSD 62:01:04:09. He found:

> [t]he condition of Mr. Yellow Robe's knees constitutes a physical impairment diagnosed by a licensed physician, Dr. Anderson. Applicant's impairment is long term, and will continue without improvement. Due to his physical impairment the Applicant will never be able to serve as a sworn law enforcement officer for the Rapid City Police Department, or any other law enforcement agency.

The Hearing Examiner also found that "no comparable level of employment with the Rapid City Police Department exists for the Applicant."

[¶ 12.] Although the Hearing Examiner found Yellow Robe to be disabled as defined by SDCL 3–12–47(3), he recommended that Yellow Robe not receive disability benefits because "he has not terminated his employment with the Rapid City Police Department." The Hearing Examiner found that "the Applicant transferred to a different, and non-comparable job, with his employer."

[¶ 13.] In Matter of Schott, SDRS Case # 723625 (decided October 23, 1992), SDRS was presented with a strikingly similar case. Reiny Ray Schott was a senior patrolman with the Rapid City Police Department. He was injured and could no longer perform the duties of a city patrolman. Schott then transferred to the position of "evidence custodian" which was a civilian job with the Rapid City Police Department. Schott's disability application was initially denied by the SDRS Administrator but the Board reversed, finding that "[t]he applicant's contributory service with the System was terminated within the meaning of ARSD 62:01:04:02 effective as of January 1, 1992,

because he no longer qualified for Class B membership and was reclassified as a Class A member." Schott ceased to be a Class B member so his contributory service in Class B was terminated even though he was still a contributing member to the system under Class A.

[¶ 14.] Yellow Robe argues that the doctrine of *stare decisis* mandates that the decision in his case follow the decision in Matter of Schott. However, the doctrine of *stare decisis* does not apply to administrative determinations:

"In the judicial setting, previously decided questions of law involving similar fact situations often provide precedential value, embodying the concept of stare decisis. Both federal and state courts have repeatedly noted, however, that administrative agencies are not bound by stare decisis *as it applies to previous agency decisions.* The U.S. Supreme Court has stated that, 'An agency's view of what is in the public interest may change, either with or without a change in circumstances.'"

*Interstate Telephone Cooperative, Inc. v. Public Utilities Commission of the State of South Dakota,* 518 N.W.2d 749, 752–753 (S.D.1994)(citing *Motor Vehicle Mfrs. Ass'n of the United States, Inc., v. State Farm Mutual Auto. Ins. Co.,* 463 U.S. 29, 57, 103 S.Ct. 2856, 2874, 77 L.Ed.2d 443, 446 (1983) (citation omitted)). *See also City of Alma v. United States,* 744 F.Supp. 1546, 1561 (S.D.Ga.1990)("An agency is not forever bound by its prior determinations, as its view of what is in the public interest may change, even if the circumstances do not.").

[¶ 15.] Although *stare decisis* does not apply, the legislature has enacted its substantial equivalent in SDCL 3–12–100 which provides the following:

The board of trustees shall set the criteria for determining the disability of members. Methods of disability determination *shall be applied uniformly and consistently to all members applying for the disability benefits."*

(emphasis added). SDCL 3–12–100 does not mean an agency is married to a decision forever. Times change and there are good reasons for an agency to divorce itself from an earlier decision. However, absent a sound reason for changing treatment of claimants in the same situation, SDCL 3–12–100 requires the agency to continue to treat similar claimants similarly.

[¶ 16.] The SDRS Board's decision to deny Yellow Robe's application was based solely on the determination that the law relating to Yellow Robe's claim was changed by the 1992 amendment to SDCL 3–12–98 and the subsequent amendment of the SDRS administrative rules. No other reasons were given for treating Yellow Robe different from Schott. However, examination of the 1992 amendment to SDCL 3–12–98 and the subsequent amendment of the SDRS rules reveals that the law did not actually change in relationship to Yellow Robe's claim. Since the law and the rules did not change, there was no good reason to treat Yellow Robe different from Schott. Therefore, SDCL 3–12–100 required Yellow Robe and Schott to be treated uniformly.

[¶ 17.] SDCL 3–12–98 was amended by the South Dakota Legislature in 1992. Prior to the amendment, the statute provided as follows:

A contributing member who becomes disabled and who has rendered at least three years of credited service prior to becoming disabled or was disabled by accidental means while performing his usual duties for his employer is eligible for a disability allowance provided such disability is expected to be of long, con-

tinued and indefinite duration of at least one year.

The 1992 amendment, effective July 1, 1992, added the following provision:

> In order to be eligible for a disability allowance, a member shall be disabled on the date the contributory service ends. Any member who fails to file with the administrator an application for disability benefits within three years of the date on which the member's contributory service ends, forfeits all rights to disability benefits.

The 1992 amendment was a "department bill" introduced at the request of SDRS on behalf of the Retirement Laws Committee. Senate Bill 16 was passed without amendment on the consent calendar[1] in both houses of the legislature.

[¶ 18.] ARSD 62:01:04:02 provided the same in 1992 as it does now:

> A member whose application for a disability allowance is approved shall receive the allowance beginning on the first day of the month following the date on which the member's contributory service terminates.

At the time Schott was decided by the SDRS Board, a member could not begin to receive disability until the member's contributory service terminated. The only thing that changed between Schott's approval and Yellow Robe's denial was addition of the language from ARSD 62:01:04:02 to SDCL 3–12–98. The requirement that the member's contributory service end before being eligible for disability was already contained in the SDRS rule and therefore already part of the ARSD jurisprudence. The 1992 amendment to SDCL 3–12–98 did not add the requirement that contributory service end before a claimant was eligible for disability, it only added what was already in the rules to SDCL 3–12–98.

[¶ 19.] In the Hearing Examiner's decision, the Hearing Examiner refers to the SDRS amendment to ARSD 62:01:04:09 as adding an additional requirement that the claimant must have ended his employment with his employer to be eligible for disability. On May 24, 1998, ARSD 62:01:04:09[2] was amended and ARSD 62:01:04:09.01 was added. Before the amendment, ARSD 62:01:04:09 provided as follow:

> *62:01:04:09. Criteria for determining disability—Position of comparable level.* An applicant shall be granted a disability allowance only if the applicant establishes the following by a preponderance of evidence:
>
> (1) The applicant has a mental or physical impairment which has been diagnosed by a license physician;
>
> (2) At the time of termination of the applicant's employment, his impairment was of sufficient severity to prevent the applicant from continuing to perform his usual duties for his employer;
>
> (3) At the time of termination of the applicant's employment, his impairment was of sufficient severity to prevent him from performing the duties of a position of comparable level for which he is qualified by education, training, and experience; and

1. The purpose of the consent calendar is to expedite voting on non-controversial bills. Bills may be placed on the consent calendar by motion following "do pass" action in committee. If any committee member objects, the bill is not placed on the consent calendar. Similarly, on the floor, any member of the body may request that a bill be removed from the consent calendar. When the consent calendar comes to a vote, all of the bills are considered at once, greatly reducing the time it would take to consider each bill separately.

2. After May 24, 1998, ARSD 62:01:04:09 applied only to claimants whose contributory service ended before July 1, 1995.

(4) At the time of termination of the applicant's employment, the disability was expected to last at least one year. Evidence that the applicant could actually secure a position of comparable level or that such a position is actually available is not required to support a finding that an applicant is capable of performing the duties of such a position.

After the amendment, the new ARSD 62:01:04:09.01 provided:

*62:01:04:09.01. Criteria for determining disability if contributory service ended after July 1, 1995—Certification by employer.*

An applicant whose contributory service ends on or after July 1, 1995, shall be granted a disability allowance only if the applicant establishes subdivisions (1), (2), and (4), below, by a preponderance of evidence, and provides subdivision (3), below:

(1) The applicant has a mental or physical impairment which has been diagnosed by a license physician;

(2) At the time of termination of the applicant's employment, his impairment was of sufficient severity to prevent the applicant from continuing to perform usual duties for the applicant's employer;

(3) At the time of termination of the applicant's employment, the impairment was of sufficient severity to prevent the applicant from performing the usual duties of the applicant's position or the usual duties of a position of comparable level for the applicant's employer, both as so certified by the employer; and

(4) At the time of termination of the applicant's employment, the disability was expected to last at least one year. In providing certification pursuant to subdivision (3), above, an employer shall consider the applicant's education, experience, training, work history, impairment, location of residence, and compensation and benefits in relation to positions of possible comparable level.

ARSD 62:01:04:09.01 applies to claimants whose contributory service ended after July 1, 1995; therefore, it applies to Yellow Robe whose contributory service in Class B ended on May 1, 1996. The requirement that the claimant must have ended his employment with his employer was in the rule before it was amended and continued in the same language after ARSD 62:01:04:09.01 was added to the rules.

[¶ 20.] The SDRS Board concluded that Matter of Schott did not apply because of the new amendment to the statute. The Hearing Examiner stated "[h]ad South Dakota's Legislature not amended SDCL 3–12–98 in 1992, Applicant Yellow Robe could have successfully applied for SDRS disability benefits." The SDRS Board misconstrued the 1992 amendment to SDCL 3–12–98.

[¶ 21.] As already noted, the first part of the amendment essentially mirrored ARSD 62:01:04:02, which already required contributory service to end before benefits could begin. The meat of the 1992 amendment to SDCL 3–12–98 was the requirement that placed a three year limit on the time to apply for disability benefits from the end of contributory service. There was no change in the requirement that the member's "contributory service" end before receiving benefits.

[¶ 22.] Yellow Robe's contributory service in Class B ended on May 1, 1996. The statutes clearly distinguish between Class B membership and Class A membership. The membership is different. Class B consists of justices, judges, state law enforcement officers, magistrate judges, municipal police officers, municipal firefighters, county sheriffs, deputy county

sheriffs, and penitentiary correctional staff, parole agents, air rescue firefighters, campus security officers, court services officers, conservation officers, and park rangers. SDCL 3–12–47(18). Class A consists of all other members. SDCL 3–12–47(16). The rate of contribution is different. Class A members contribute 5% of their salary. SDCL 3–12–71(1). Class B members contribute 8% of their salary. SDCL 3–12–71(3). The benefits for Class A and B members are different. SDCL 3–12–91 and 3–12–92. Normal retirement age is different. Class A members normal retirement age is 65; Class B members normal retirement age is 55. SDCL 3–12–47(48). Class A members are subject to a "Rule of 85."[3] SDCL 3–12–47(60)(a). Class B members are subject to a "Rule of 75."[4] SDCL 3–12–47(60)(c). When a member switches from Class A to Class B or Class B to Class A, the member gets two separate retirement benefits: a Class A retirement benefit and a Class B retirement benefit. *See e.g.*, SDCL 3–12–92.1 to 3–12–92.3.

[¶ 23.] Although Yellow Robe's move from Class B membership as a police officer to Class A membership as a license compliance officer was handled by the Police Department as a transfer, Yellow Robe's Class B contributory service ended. Yellow Robe was finished as a police officer. He applied for and was hired in a new civilian position. The fact that the Police Department handled Yellow Robe's termination as a police officer and subsequent employment as a license compliance officer as a transfer is irrelevant. SDRS denial of disability benefits exalts form over substance. As the circuit court noted in its memorandum decision: "The result

seems inequitable—Apparently Mr. Yellow Robe could simply have resigned one day prior to May 1, 1996, to otherwise qualify for benefits." Disability claimants should not be tripped-up by technicalities over which they have no control.[5] Either they are disabled or they are not, and Yellow Robe was disabled.

[¶ 24.] The SDRS Board's decision in this case was based on an erroneous analysis of the law. Matter of Schott took into consideration the requirement that "contributory service" end. In Matter of Schott, the SDRS Board found that when an individual no longer qualified for Class B membership and was reclassified as a Class A member, the member's contributory service in Class B ended. The reasoning in Matter of Schott is still sound. Matter of Schott was decided on October 23, 1992, more than three months after the 1992 amendment to SDCL 3–12–98 took effect and more than seven months after it was signed by the Governor on March 16, 1992. The SDRS Board obviously knew about the 1992 amendment (because it was a department bill proposed by SDRS) when it decided Matter of Schott.

[¶ 25.] Yellow Robe will not receive a windfall. The evidence established that the difference between his 1996 salary as a detective ($35,892.00) and his 1996 salary as a license compliance officer ($30,173.00) was $5,719.00. The disparity would continue to grow and the evidence showed that the lifetime difference would be $65,596. Yellow Robe is no longer eligible for the earlier retirement and the superior benefits of the Class B system. He will have to work at least five years longer for a smaller retirement. If Yellow Robe had

---

3. To meet the "Rule of 85" the member's years of service and age must equal 85.

4. To meet the "Rule of 75" the member's years of service and age must equal 75.

5. Yellow Robe did not decide how to handle the new job. The Police Department decided to handle it as a transfer.

not transferred to the civil side of the Police Department, but instead taken a job with an outside employer, he would also be drawing two checks. Yellow Robe is entitled to his disability no matter where he works now.

## CONCLUSION

[¶ 26.] Yellow Robe's contributory Class B service ended when he ceased to be a Class B member. Yellow Robe was disabled. He qualified for Class B disability benefits. Therefore, we reverse and remand with directions that SDRS approve Yellow Robe's Class B disability benefits.

[¶ 27.] GILBERTSON, Chief Justice, and SABERS and MEIERHENRY, Justices, and GIENAPP, Circuit Judge, concur.

[¶ 28.] GORS, Circuit Judge, for KONENKAMP, Justice, disqualified.

[¶ 29.] GIENAPP, Circuit Judge, for ZINTER, Justice, disqualified.