**ALBERT BRYAN, COMM. OF LABOR, GOV'T OF THE VIRGIN ISLANDS, DEPT. OF LABOR, and FOOTLOCKER RETAIL, INC. d/b/a CHAMPS SPORTS, Appellants/Respondents**

**v.**

**CARMEN PONCE, Appellee/Petitioner**

S. Ct. Civ. No. 2008-004

Supreme Court of the Virgin Islands

March 6, 2009

RICHARD S. DAVIS, ESQ., AAG, Dept. of Justice, St. Thomas, USVI, *Attorney for Appellant.*

K. Glenda Cameron, Esq., Rohn & Cameron, LLC, St. Croix, USVI, *Attorney for Appellee.*

HODGE, *Chief Justice*; SWAN, *Associate Justice*; and HODGE, *Designated Justice.*[1]

## OPINION OF THE COURT

(March 6, 2009)

Per Curiam. Appellant, the Government of the Virgin Islands, Albert Bryan, Commissioner of Labor, Department of Labor (hereafter "the Government"),[2] challenges the December 18, 2007 Superior Court order holding that Appellee, Carmen Ponce (hereafter "Ponce"), was eligible for unemployment insurance benefits. For the reasons which follow, we will affirm the Superior Court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 6, 2002, Ponce began working as a full-time manager for Footlocker Retail, Inc. d/b/a Champs Sports (hereafter "the Employer"), located in Frederiksted, St. Croix. On June 12, 2003, the Employer's District Manager visited and evaluated the store which Ponce managed. After telling Ponce that the store was "looking better" but was not earning enough money, the District Manager told Ponce to take a few days off and return to work with a plan to increase the store's profitability. When Ponce returned to work several days later, the District Manager was again at the store, this time accompanied by an Assistant Manager from a Puerto Rico store. The District Manager escorted Ponce to the back office and demanded that she immediately resign or she would be fired. Despite repeatedly asking why she would be fired, the District Manager refused to give Ponce a reason. Instead, he gave her a piece of paper and told her to write that she was resigning for personal reasons. After initially insisting that the District Manager would have to write the note because she did not

---

[1] Associate Justice Maria M. Cabret has been recused from this matter. Designated Justice Verne A. Hodge, a retired Presiding Judge of the Superior Court, sits in her place by designation pursuant to 4 V.I.C. § 24(a).

[2] Because Footlocker Retail, Inc. d/b/a Champs Sports did not file a separate appeal from the Superior Court's order or join in the Government's appeal, it will be referred to herein as "the Employer" rather than as an appellant.

want to resign, Ponce eventually gave in and wrote "I Carmen Ponce Today June 17, 2003 — [SSN] am leaving my job's (*sic*) because of personal reasons." (ALJ Decision of July 8, 2008, 2.)

Thereafter, Ponce applied for unemployment insurance benefits but was denied by the Department of Labor's (hereafter "DOL") adjudicator who stated:

> You stated you quit your job because if you did not you would be fired. You submitted a resignation letter to your employer giving reasons for leaving as personal. There is no evidence of a forced resignation or the situation being as you have stated. You are disqualified from receiving benefits.

(Hr'g Tr. 2-3, May 6, 2004.) Ponce appealed the DOL's determination and appeared at a hearing before an Administrative Law Judge (hereafter "ALJ") on May 6, 2004 to testify regarding her reason for resigning. Ponce's testimony recounted the ultimatum presented to her by the Employer, who did not appear at the hearing to offer any testimony. On July 8, 2004, the ALJ mailed its decision, which concluded that Ponce had voluntarily quit her position without good cause and affirmed the DOL's decision denying Ponce unemployment insurance benefits.

On August 4, 2004, Ponce filed her Petition for Review of Agency Action with the Superior Court. In an order entered on December 18, 2007, the Superior Court, concluding that Ponce did not voluntarily resign, reversed the ALJ's decision and remanded to the DOL for a determination of the unemployment insurance benefits owed to Ponce.

The Government filed a notice of appeal on January 10, 2008.

## II. DISCUSSION

### A. Jurisdiction and Standards of Review

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees [and] final orders of the Superior Court . . . ." V.I. CODE ANN. tit. 4 § 32(a). Because the Superior Court's order was entered on December 18, 2007 and the notice of appeal was filed on January 10, 2008, this appeal is timely. *See* V.I. S. CT. R. 5(a)(1) ("[I]n a civil case . . . [where] the Government of the Virgin Islands or an officer or agency thereof is a party, the notice of appeal may be filed by any party within sixty days after [entry of the order appealed from].").

Our standard of review in examining the Superior Court's application of law is plenary. *St. Thomas-St. John Bd. of Elections v. Daniel*, 49 V.I. 322, 329 (V.I. 2007). In particular, we exercise plenary review of questions of statutory construction. *VIPSC v. VIWAPA*, 49 V.I. 478, 482 (V.I. 2008). Findings of fact, however, are reviewed only for clear error. *Daniel*, 49 V.I. at 329.

## B. The Superior Court Did Not Lack Jurisdiction to Hear the Petition for Writ of Review despite Ponce's Failure to File an Attorney's Certificate

As one of its grounds for appeal, the Government asserts that the Superior Court lacked jurisdiction to hear Ponce's appeal of the ALJ's decision. In particular, the Government argues that Ponce did not comply with Superior Court Rule 15(a), which provides, in relevant part, that:

> A writ of review may be granted by the [Superior Court] upon the petition of any person aggrieved by the decision or determination of an officer, board, commission, authority or tribunal.... The petition shall be signed by the petitioner or his attorney, and *shall be accompanied by the certificate of the attorney that he has examined the process or proceeding and the decision or determination therein sought to be reviewed, that the same is in his opinion erroneous and that the petition is not filed for delay.*

SUPER. CT. R. 15(a) (emphasis added). The Government maintains that compliance with Rule 15(a)'s attorney's certificate requirement is a jurisdictional mandate[3] for writs brought pursuant to title 24, section 306 of the Virgin Islands Code (hereafter "the Code") and that the attorney's certificate requirement does not conflict with the procedural provisions contained in section 306. Title 24, section 306 is contained in Chapter 12 of the Code, which is titled "Virgin Islands Unemployment Insurance," and states, in relevant part:

---

[3] In *Pichardo v. Comm. of Labor*, 49 V.I. 447 (V.I. 2008), this Court was faced with the issue of whether Superior Court Rule 15(a)'s thirty-day deadline was a jurisdictional mandate. In *Pichardo*, Appellant's petition for writ of review under title 24, section 457(a) of the Code was initially dismissed by the Superior Court for failure to comply with Rule 15(a)'s attorney's certificate requirement. Upon reconsideration, however, the court instead dismissed the matter for untimeliness. Accordingly, we were never confronted with the jurisdictional implication of the attorney's certificate requirement.

After a hearing a hearing examiner shall make findings and conclusions promptly and on the basis thereof affirm, modify, or reverse the Commissioner's determination or redetermination. . . . This decision shall be final unless a party initiates judicial review by filing in the [Superior] Court of the Virgin Islands a petition for review within 30 days . . . The petition for review shall state the grounds upon which review is sought *but need not be verified.* Exceptions to rulings of the hearing examiner shall not be necessary to obtain judicial review nor shall a bond be required either as a condition of initiating a proceeding for judicial review of a hearing examiner's decision as to benefit rights or of entering an appeal from the decision of the court upon such review.

24 V.I.C. § 306(e)(1) (emphasis added).

Essentially, the parties disagree over whether Rule 15(a)'s attorney's certificate requirement conflicts with title 24, section 306(e)(1)'s statement that a petition for review need not be verified. The Government contends that, because verification differs from an attorney's certification, there is no inconsistency in requiring a party to file an attorney's certificate even though the statute provides that the petition need not be verified. Conversely, Ponce maintains that verification is the same as an attorney's certification and, therefore, Rule 15(a)'s attorney certificate requirement is superseded by section 306(e)(1). On this issue, the Superior Court held that Ponce was not required to file an attorney's certificate with her petition for writ of review, citing to *V.I. Coalition with Disabilities, Inc. v. Gov't,* 47 V.I. 315 (V.I. Super. 2005), "for the proposition that appeals filed pursuant to 24 V.I.C. § 306 are not governed by Superior Court Rule 15." (Order on Writ of Review, 1.)

In *V.I. Coalition,* the respondents, similar to the Government in this case, opposed a petition for writ of review on the ground that the petitioner had failed to file an attorney's certificate along with the petition for writ of review. The Superior Court there held that the failure to file a certificate of attorney does not render the petition "incomplete and fatally defective" under the statutory scheme for unemployment insurance benefits. 47 V.I. at 318 (internal quotations omitted). Notably, the *V.I. Coalition* court distinguished *Tip Top Constr., Inc. v. Gov't,* 41 V.I. 72 (V.I. Super. 1999), and *Save Long Bay Coalition, Inc. v. V.I. Bd. of Land Use Appeals,* 45 V.I. 312 (V.I. Super. 2003), the two Superior Court cases

cited for support by the Government in the case currently before us. The *V.I. Coalition* court reasoned that the specific statutes at issue in those two cases, title 5, section 1421[4] and title 12, section 913(d),[5] respectively, specifically incorporated Rule 15(a) by reference. *See* 47 V.I. at 324. In this case, after equating verification with an attorney's certificate and thus finding a conflict between Rule 15(a) and title 24, section 306(e)(1), the Superior Court held that the statute, which does not incorporate the Superior Court rules by reference, "governs over the procedural court rule." *Id.* at 325.

 We first briefly address the distinction between verification and an attorney's certificate. BLACK'S LAW DICTIONARY defines verification as "[a] formal declaration made in the presence of an authorized officer . . . whereby one swears to the truth of the statements in the document." BLACK'S LAW DICTIONARY 1593 (8th ed. 2004). In contrast, the attorney's certificate required by Rule 15(a) does not require the attorney to verify the truth of the petition's contents based on his personal knowledge. Instead, Rule 15(a) requires the attorney to certify that he has examined the ALJ's decision and believes it to be erroneous and that the petition is not filed for the purpose of delay. In distinguishing verification from an attorney's certification, one appellate court stated:

> By signing a pleading, an *attorney certifies* that he has read the document and that 'to the best of [his] knowledge, information, and belief

---

[4] Title 5, section 1421, which is the general writ of review statute, provides that "[a]ny party to any proceeding before or by any officer, board, commission, authority, or tribunal may have the decision or determination thereof reviewed for errors therein as prescribed in this chapter and *rules of court. . . .*" 5 V.I.C. § 1421 (emphasis added). Accordingly, this statute expressly invokes the Superior Court rules, including Rule 15(a).

[5] Title 12, section 913(d) provides that:

> Pursuant to Title 5, chapter 97 and *Appendix V, Rules 10 and 11* of this Code, a petition for writ or review may be filed in the [Superior] Court of the United States Virgin Islands in the case of any person aggrieved by the granting or denial of an application for a coastal zone permit, including a permit or lease for the development or occupancy of the trust lands or other submerged or filled lands, or the issuance of a cease and desist order, within forty-five days after such decision or order has become final provided that such administrative remedies as are provided by this chapter have been exhausted.

(emphasis added). As the *V.I. Coalition* court noted, Rules 10 and 11 of Appendix V to Title 5 of the Code are now encompassed in Superior Court Rule 15. *See* 47 V.I. at 324; *see also Illingworth v. VI Bd. of Land Use Appeals*, 27 V.I. 165, 168 (D.V.I. 1991). Accordingly, title 12, section 913(d) makes explicit reference to the antecedents of Rule 15(a).

formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment.' *See* TEX. R. CIV. P. 13. However, by signing an affidavit or a *verification*, a person represents the facts to be true and based on personal knowledge.

*In re Trinity Universal Ins. Co. of Kansas*, No. 04-06-00471-CV, 2006 Tex. App. LEXIS 8550, at *5, [WL] (Tex. Crim. App. Oct. 4, 2006). (emphases added). Accordingly, consistent with these authorities, we conclude that an attorney's certificate is not equivalent to verification.

Although we acknowledge the distinction between verification and an attorney's certification, the Government's argument that petitions brought pursuant to title 24, section 306(e) must be accompanied by an attorney's certification is nevertheless unavailing. Unlike the two statutes at issue in *Tip Top Constr.* and *Save Long Bay, supra* n. 4-5, the statute at issue here does not make specific reference to Rule 15(a) nor does it make general reference to the rules of the Superior Court. On the contrary, section 306(e)(1) expressly sets out several procedural requirements of its own for the filing of petitions for writs of review involving unemployment insurance benefits, including that the petition need not be verified. In fact, in clear conflict with Rule 15(b)'s requirement of a bond, section 306(e)(1) states "nor shall a bond be required . . . ."

■ Accordingly, because section 306(e)(1) does not explicitly or implicitly incorporate Rule 15(a) or the court rules and because the statute directly conflicts with the rule on at least one procedural requirement, we hold that Rule 15(a)'s attorney's certificate requirement is not applicable to petitions for writs of review brought pursuant to title 24, section 306. Furthermore, we note that our holding is consistent with the Virgin Islands Unemployment Insurance Act's pronouncement that the Act "shall be *liberally construed* to accomplish its purpose to promote employment security by providing through the accumulation of reserves for the payment of compensation to individuals with respect to their unemployment." 24 V.I.C. § 301(b) (emphasis added). Consequently, the Superior Court did not lack jurisdiction to rule upon Ponce's petition for writ of review, nor does this Court lack jurisdiction to hear this appeal.

■ In addition, we find it prudent to analyze the continuing viability of Rule 15(a)'s attorney's certificate requirement in light of Federal Rule of Civil Procedure 11(b). Federal Rule 11(b) provides that:

By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Therefore, pursuant to Federal Rule 11, by signing a pleading, including a petition for writ of review, an attorney or *pro se* party[6] represents to the court, *inter alia*, that he is not submitting the document for any improper purpose, including delay, and that the contentions therein are supported by existing law. The requirement for signing of pleadings with the sanctioning consequences of Federal Rule 11 was added in 1983, after the 1982 adoption of Rules 10 and 11 of Appendix V to Title 5 of the Code (the antecedent rules to Superior Court Rule 15), and is made specifically applicable to the Superior Court of the Virgin Islands by Superior Court Rule 29. Rule 29 states that "Rules 10 and 11 of the Federal Rules of Civil Procedure as to form, signing and verification of pleadings and other papers shall apply to the territorial court." SUPER. CT. R. 29 (emphasis added).

---

[6] Superior Court Rule 15(a)'s certification requirement applies by its own terms only to parties represented by an attorney. Federal Rule of Civil Procedure 11(b), however, requires that parties represented by attorneys and those appearing *pro se* abide by the certification requirement. In this case, the distinction is immaterial because Ponce's petition for writ of review was filed by her attorney.

■ Both the federal rule and the court rule explicitly require a party to certify that the filing is not being submitted for an improper purpose. Additionally, Federal Rule 11(b)(2)'s requirement that a party certify that the contentions are supported by existing law necessarily requires a party to examine the decision from which a writ of review is sought and conclude that it is legally erroneous, thereby justifying the review sought. Thus, Federal Rule 11 adequately encompasses both of the objectives sought to be accomplished by Superior Court Rule 15(a)'s attorney's certificate. Therefore, we conclude that Superior Court Rule 15(a)'s attorney certificate requirement is superfluous given the applicability of Federal Rule 11(b) to pleadings, motions, and other papers filed in the Superior Court of the Virgin Islands.[7] Accordingly, the failure to file an attorney's certificate shall not prevent the maintenance of *any* petition for writ of review in the Superior Court duly signed, given the requirements imposed by Federal Rule of Civil Procedure 11.

## C. The Superior Court Did Not Err in Reversing the ALJ's Decision

As additional grounds for appeal, the Government argues that the Superior Court exceeded the scope of authority granted to the court by title 24, section 306(e) and that the Superior Court erred in holding that Ponce's resignation was involuntary.

### 1. The Superior Court Did Not Exceed the Scope of Authority Granted to the Court by 24 V.I.C. § 306(e)(3)

The Government contends that the Superior Court exceeded the scope of authority granted to it by "substituting its judgment regarding the facts for that of the hearing officer." (Appellant's Br. 13.) The Superior Court's scope of review of an ALJ's decision regarding unemployment benefits is prescribed by title 24, section 306(e)(3) of the Code, which provides that:

> The jurisdiction of the reviewing court shall be confined to questions of law, and, *in the absence of fraud, the findings of fact by the hearing examiner, if supported by substantial evidence regardless of statutory*

---

[7] This Court recognizes the contrary holding by the Superior Court in *Save Long Bay*, 45 V.I. at 316. In that case, the court relied upon Superior Court Rule 7 in determining that Federal Rule 11 does not apply. Superior Court Rule 29, however, expressly makes Federal Rule 11's provisions regarding the signing of pleadings applicable to all pleadings filed in the Superior Court.

*or common-law rules, shall be conclusive.* Any additional evidence required by the court shall be taken before the hearing examiner; and the hearing examiner, after hearing such additional evidence, shall file with the court such additional or modified findings of fact or conclusions as he may make, together with transcripts of the additional record. . . .

(emphasis added). Thus, pursuant to the statutory provision, the Superior Court may not make new findings of fact unless the ALJ's findings were not supported by substantial evidence.

Despite declaring that the Superior Court substituted its own judgment regarding the facts, the Government does not point to any specific examples in the record to support this argument. In fact, it is unclear whether the Government is truly contending that the Superior Court made new findings of fact. Rather, the Government appears to be arguing that, based on the facts found by the ALJ the Superior Court exceeded its authority when stating that "nothing [in the record below] indicates that [Ponce] had a choice other than that her employment with Footlocker would come to an end." (Order on Writ of Review, 5.) As to the findings of fact, the Superior Court also stated that "[t]he testimony below establishes that the employer initiated the termination and that it was presented to [Ponce] as a *fait accompli.*" (*Id.*) (emphasis in original).

Significantly, a review of the ALJ's findings of fact establishes that the ALJ likewise found that Ponce resigned because her Employer told her she must do so or she would be fired. The ALJ's findings of fact included:

3. On Tuesday, June 17, 2003 [Ponce] returned to work and met with the District Manager and an Assistant Manager from another store, Mr. Ruben Hernandez. After some posturing, [Ponce] was called to the back office of the store where the District Manager in the presence of the Assistant Manager demanded [Ponce's] resignation. [Ponce] was told she should immediately resign or she would be fired.

4. [Ponce] feeling great stress from the request for her resignation or in the alternative facing the possibility of being fired from her position rationalized that she did not want to be fired and complied with the Employer's request for her resignation.

(ALJ Decision of July 8, 2008, 2.) Therefore, the Superior Court, which based its decision solely upon the facts as found by the ALJ, did not violate

the section 306(e)(3)'s mandate that the ALJ's findings of fact are considered conclusive unless unsupported by substantial evidence. Contrary to the Government's contention, the court properly accepted the ALJ's factual determinations and simply applied them to the law in order to reach its legal conclusion regarding the voluntariness of the resignation. Accordingly, the Superior Court did not substitute its findings of fact for those of the ALJ.

## 2. The Superior Court Did Not Err in Holding that Ponce's Resignation Was Involuntary

■ At the ALJ hearing, despite finding that Ponce was forced to immediately resign or face being fired, the ALJ nevertheless concluded that Ponce's reason for resigning did not constitute good cause under the standard established in *Cunningham v. V.I. Unemployment Sec. Agency*, 20 V.I. 214, 216 (D.V.I. 1983). On review of the ALJ's decision, the Superior Court applied the factors set out in *Hargray v. Hallandale*, 57 F.3d 1560, 1568 (11th Cir. 1995), for determining whether a resignation was voluntary or obtained by coercion or duress, namely:

> (1) whether the employee was given some alternative to resignation; (2) whether the employee understood the nature of the choice he was given; (3) whether the employee was given a reasonable time in which to choose; (4) whether the employee was permitted to select the effective date of the resignation; and (5) whether the employee had the advice of counsel.

*Hargray*, 57 F.3d at 1568 (noting that other courts have relied upon similar factors). In applying those factors, the court found that: Ponce was not given any alternative to resignation; she clearly understood the nature of the choice; it appeared that she was required to make her decision immediately; she was not given a choice as to the effective date of resignation; and she did not have the advice of counsel. Consequently, the Superior Court concluded that Ponce's resignation was involuntary and that she was, therefore, entitled to unemployment insurance benefits. Our analysis of the relevant factors leads us to likewise conclude that Ponce did not voluntarily resign her employment.

On appeal to this Court, the Government first maintains that "[t]he [Superior Court] exceeded its authority by substituting its analysis and conclusion based on the record in this case for the entirely reasonable and cogent conclusions of the ALJ." (Appellant's Br. 15.) Pursuant to title 24,

section 304(b)(2) of the Code, an employee who leaves her job voluntarily without good cause is disqualified from receiving unemployment insurance benefits. Both the Superior Court, as the first court of review, and this Court conduct a *de novo* review of whether Ponce's resignation was voluntary. *See, e.g., Hargray*, 57 F.3d at 1567; *Cohen v. Pierre*, 651 N.W.2d 265, 267 (S.D. 2002). Therefore, because the Superior Court's review was *de novo* and the court applied only those findings of fact as determined by the ALJ, the Government's contention that the Superior Court erroneously substituted its conclusion for that of the ALJ lacks merit.

█ The Government additionally contends on appeal that the Superior Court erred in concluding that Ponce's resignation was involuntary. We disagree. The *Cunningham* case, on which the ALJ relied in concluding that Ponce did not have good cause to resign, held that "[w]here the circumstances 'produce pressure to terminate employment that is both real and substantial and would compel a reasonable person under the circumstances to act in the same manner,' the claimant has 'good cause' to 'leave' a job within the meaning of 24 V.I.C. § 304(b)(2)." 20 V.I. at 216 (quoting *Taylor v. Unemployment Comp. Bd. of Review*, 474 Pa. 351, 378 A.2d 829, 832-33 (Pa. 1977)). Although explicitly recognizing that Ponce was under pressure from the Employer to resign, the ALJ nevertheless concluded that Ponce lacked good cause because she resigned after "rationaliz[ing]" that she did not want to be fired.

█ Title 24, section 304(c)(2) of the Code provides some guidance as to the factors that should be considered when determining if good cause exists:

> [I]n determining the existence of good cause for leaving or refusing any work, the Director shall . . . consider the degree of risk to the claimant's health, safety, and morals, his physical fitness for the work, his prior training and experience, his prior earnings . . . and such other factors as would influence a reasonably prudent person in the claimant's circumstances.

Additionally, 76 AM. JUR. 2D *Unemployment Compensation* § 102 (Westlaw Database updated Sept. 2008), explains that:

> To be entitled to unemployment compensation benefits for voluntarily quitting a job for good cause, the claimant must have explored all vi-

able options before making the decision to quit. However, an unemployment compensation claimant is not required to take measures to resolve a problem with an employer before quitting if such measures would constitute nothing more than a futile gesture.

> *Voluntary . . . connotes a decision to quit that is freely given and proceeding from one's own choice or full consent. To constitute good cause, the circumstances which lead an employee to leave the job must be such as would cause a reasonable person to leave.* It has also been said that the quitting must be for such a cause as would reasonably motivate, in a similar situation, the average able-bodied and qualified worker to give up his or her employment. Good cause is dependent not only on the reaction of the average employee to the circumstances, but also on the good faith of the employee involved, which includes the presence of a genuine desire to work and to be self-supporting.

(emphasis added). This is essentially the same standard as expressed in *Cunningham. See* 20 V.I. at 216. Thus, our initial focus is on whether the employee's resignation was involuntary, and only upon a finding of voluntariness will we turn to a good cause analysis.

■■ ■■ Importantly, because an employee's resignation is presumed voluntary, Ponce must offer sufficient evidence to prove that her resignation was not voluntary. *See, e.g., Hargray,* 57 F.3d at 1568. In determining, under an objective standard, whether an employee's resignation was involuntary, *i.e.* whether it was procured under coercion or duress by the employer, the Eighth Circuit Court of Appeals has stated that:

> Factors to be considered in determining whether an employee was coerced are:
> (1) Whether the employee was given an alternative to resignation;
> (2) Whether the employee understood the nature of the choice he was given;
> (3) Whether the employee was given a reasonable time in which to choose;
> (4) Whether the employee was permitted to select the effective date of the resignation.
> A resignation is deemed involuntary in fact when:
> (1) The employee involuntarily accepted the terms of his or her employer;

(2) The circumstances permitted no other alternative; and

(3) The circumstances were the result of coercive acts of the employer.

*Angarita v. St. Louis County*, 981 F.2d 1537, 1544 (8th Cir. 1992) (internal citations omitted). *Accord Hargray*, 57 F.3d at 1568.

 In considering the relevant factors, we look, as the Superior Court did, to Ponce's testimony in response to the ALJ's inquiry regarding her reason for writing the resignation note:

> Because he was forcing me to write it. . . . If — if I let him fire me, it's going to look bad in my resume for me to get a job to feed my daughter. . . . I mean that's one of my best job[s] as a manager. . . . I mean that would have been my first reference when I apply for a next job. And . . . at the time I was so scared. . . . I didn't know what to do.
>
> I had my back against the wall because they keep telling me to write this, write that, write anything. . . . They were telling me what to do.
>
> I [was] just thinking like what if I go and I get a next job. If I write that they fired me, when they call these people . . . I don't know what they . . . could tell them, you know. And that would stop me from getting a job.
>
> . . . .
>
> No reason would I ever in my life . . . have quit. Never quit. I reached so far to quit, you know . . . and for my daughter, being single, that does give me more motivation more to go out there and work so I could make sure I take care of my daughter. I'm a single parent. I'm the only one providing for her. I got to make sure she has her medicine. I got to make sure we eat. She eat. So there wasn't no reason for me to resign.

(Hr'g Tr. 19-20, 26-27.) This testimony, which was uncontroverted because the Employer did not appear at the hearing, clearly demonstrates that Ponce's only alternative to resigning was being fired by the Employer. The testimony also indicates that Ponce clearly understood the nature of her choice, as she immediately realized that being fired would likely jeopardize her ability to procure future employment. Moreover, because the District Manager and the Assistant Manager led her to the back room and told her to resign immediately, Ponce was not given a reasonable time within which to contemplate her decision.

 In a case similar to the one before us, the D.C. Court of Appeals stated, in relevant part:

255

If the Board in fact focuses on the *imminence of a threatened termination* when evaluating the claim of a worker who quit in a purported quit-or-be-fired situation, it is approaching the voluntariness inquiry reasonably.... Courts uniformly have held that a worker's leaving in the face of [a "shape up or ship out"] threat (where the employer has offered solid evidence that what was communicated was merely a warning, and not an imminent firing) is voluntary ... Such might be the case ... where, for example, there is clear evidence that the employer was not really serious, or that the employer's reason for seeking the employee's discharge lacked legitimacy and the employee reasonably ought to have stayed on and utilized the hearing tool. On the record before us, however, we can find no support for the Board's finding of a lack of imminence and thus its ultimate conclusion of voluntariness.... *In so holding, we are not improperly substituting our judgment for the Board's. We simply cannot ignore the fact that the only evidence in the record tends to support not rebut the applicable presumption of involuntariness. The employer did not appear at the hearing to introduce any contrary evidence....*

*Thomas v. D.C. Dept. of Labor*, 409 A.2d 164, 172-74 (D.C. Cir. 1979) (emphases added). Here, there is likewise no evidence tending to show that the Employer was not serious in its demand that Ponce resign, nor is there any evidence that the threatened termination was not imminent. Therefore, the circumstances here do not present a "shape up or ship out" scenario.

In further considering the applicable factors, it is clear that Ponce was not given an opportunity to select her date of resignation as she was told that she must resign immediately. Also, Ponce's uncontradicted testimony plainly indicates that she involuntarily accepted the District Manager's terms, because she told him that he would have to write the note since she did not wish to resign. Finally, other evidence generally indicates a lack of voluntariness. For instance, there is no evidence that Ponce would have resigned on or around the day of her resignation had the District Manager not told her she would be fired if she did not immediately resign. In fact, Ponce testified that her position as manager was her highest position in the industry to date and that she was a single mother and sole supporter of a child with medical problems. These facts further support Ponce's contention that she would not have freely given her resignation if the District Manager had not coerced her into doing so.

Based on the foregoing analysis, the Superior Court was correct in concluding that Ponce's resignation was involuntary. Accordingly, we hold that Ponce is not disqualified, under title 24, section 404(b)(2) of the Code, from receiving unemployment insurance benefits and, therefore, affirm the Superior Court's decision.[8]

## III. CONCLUSION

For the reasons above, this Court holds that the failure to file a Superior Court Rule 15(a) attorney's certificate does not deprive the Superior Court of jurisdiction to hear a petition for writ of review under title 24, section 306(e) of the Code. Moreover, because Superior Court Rule 15(a)'s attorney's certificate requirement is superfluous in light of Federal Rule of Civil Procedure 11(b), which is made applicable to the Superior Court by Superior Court Rule 29, the failure to file an attorney's certificate will not bar the maintenance of *any* signed petition for writ of review in the Superior Court. Additionally, we hold that the Superior Court did not exceed the scope of authority granted to it by title 24, section 306(e)(3) because the court did not substitute its own findings of fact for those of the ALJ. Finally, we hold that Ponce is eligible to receive unemployment insurance benefits because her resignation was involuntary. Accordingly, we affirm the Superior Court's December 18, 2007 order.

---

[8] Since we, like the Superior Court, conclude that Ponce's resignation was involuntary, we need not address whether her resignation was justified under a good cause theory.