#24987-rev & rem-SLZ

**2009 SD 21**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BONNIE J. BERTELSEN and
PAUL D. BERTELSEN, husband
and wife,                                                    Plaintiffs and Appellants,

     v.

ALLSTATE INSURANCE COMPANY,
an Insurance Corporation,                         Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT
OF THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

* * * *

HONORABLE WILLIAM J. SRSTKA, JR.
Judge

* * * *

PAUL T. BARNETT
JAMES L. HOY of
Hoy Trial Lawyers, Prof., LLC              Attorneys for plaintiffs
Sioux Falls, South Dakota                     and appellants.

MARK F. MARSHALL
ERIC C. SCHULTE of
Davenport, Evans, Hurwitz & Smith, LLC      Attorneys for defendant
Sioux Falls, South Dakota                     and appellee.

* * * *

CONSIDERED ON BRIEFS
ON FEBRUARY 17, 2009

OPINION FILED **04/01/09**

#24987

ZINTER, Justice

[¶1.] Paul D. Bertelsen and Bonnie J. Bertelsen sued Allstate Insurance Co. for breach of contract and bad faith arising out of Allstate's failure to pay medical benefits under Bertelsens' personal automobile insurance policy. On cross-motions for summary judgment, the circuit court dismissed the complaint. Bertelsens appeal. We reverse.

*Facts and Procedural History*

[¶2.] Bonnie Bertelsen worked as an in-home registered nurse for Universal Pediatric Services (UPS). On December 26, 2005, Bonnie was injured in an auto accident while driving a UPS company vehicle to perform her nursing duties in a patient's home. As a result of the accident, Bonnie spent six weeks in the hospital, underwent numerous surgeries, lost eight months of work, and incurred $382,849.92 in medical expenses.

[¶3.] Bonnie filed a claim for workers' compensation benefits with AIG, UPS's workers' compensation carrier. AIG denied the claim on January 10, 2006 and February 7, 2006. AIG asserted that Bonnie's injury did not arise out of and in the course of her employment.

[¶4.] Bertelsens then sought medical payment benefits from Hartford Insurance Company, UPS's automobile insurer. Hartford paid its $30,000 limits by April 2006. Bertelsens also sought to recover their medical expenses from Avera Health, Bonnie's health insurer. Avera Health paid $157,433.87. Bertelsens' subsequent health insurers, Sanford Health Plan and Blue Cross of California, paid additional health benefits.

[¶5.] Bertelsens also had a personal automobile insurance policy with Allstate that provided $100,000 of medical payments coverage. In February 2006, Bertelsens filed a claim with Allstate for those benefits. Although Allstate was aware that AIG had denied workers' compensation coverage, Allstate denied the claim on the ground that workers' compensation should provide coverage. Allstate relied on its policy's workers' compensation exclusion, which provided: "[t]his coverage does not apply to any person to the extent that the treatment is covered under any worker's compensation law."[1] Apparently acknowledging that workers' compensation coverage had been denied at that point, in a letter dated June 13, 2006, Allstate wrote to Bonnie's attorney asking how to contact AIG and promising to investigate AIG's denial of her workers' compensation claim. The letter further indicated: "Rest assured, once the investigation is complete and all available coverage is exhausted, Allstate will move quickly to resolve [Bonnie's] claim."

[¶6.] By the spring of 2007, neither AIG's workers' compensation benefits nor Allstate's medical payment benefits were forthcoming, and Bertelsens alleged that they began experiencing financial hardship. They alleged that they had to pay a medical bill to avoid a collection lawsuit, and two other bills were ready to go to collection.

[¶7.] On December 19, 2007, Bonnie filed a petition with the South Dakota Department of Labor formally seeking workers' compensation coverage. AIG answered Bonnie's petition on January 22, 2008, and for the first time admitted

---

1. Both Hartford and Avera Health paid their benefits despite having similar exclusions.

coverage for "all past, present, and future medical, hospital and health care expenses for her work related injury." Although Bertelsens' workers' compensation and health insurers ultimately paid most of Bonnie's medical expenses, Bertelsens alleged that they still had not been reimbursed for $4,144.78 in out-of-pocket costs for prescriptions, doctors' visits, co-insurance, and deductibles.

[¶8.] Bertelsens subsequently sued Allstate for breach of contract and bad faith. Bertelsens contended that Allstate breached its insurance contract in February 2006, by failing to pay the medical benefits knowing that AIG had denied Bonnie's workers' compensation benefits. Bertlesens further contended that Allstate's denial of benefits was "frivolous," "unfounded," and constituted bad faith.

[¶9.] Bertelsens moved for partial summary judgment on their breach of contract claim, and Allstate moved for summary judgment on both claims. The circuit court granted Allstate's motion, denied Bertelsens' motion, and dismissed the complaint. In dismissing the complaint, the circuit court considered the breach of contract and bad faith claims together noting that the plain language of Allstate's policy excluded coverage when the accident was covered by workers' compensation. According to the circuit court, because Bonnie's claim ultimately fell under AIG's workers' compensation coverage, Allstate had "an articulable and reasonable basis for the denial of benefits." The circuit court further ruled that "a denial of a claim that is fairly debatable and is found to be not compensable under the policy terms . . . should not constitute bad faith." Finally, the court ruled, "it appears that [Bertelsens] would not be able to show actual and consequential damages suffered as the medical bills have allegedly all been paid[.]"

[¶10.]     On appeal, Bertlesens argue that the circuit court erred in failing to conclude that Allstate had an immediate payment duty under SDCL 62-1-1.3, a statute that requires insurers covering bodily injury to pay medical benefits if an employer denies workers' compensation coverage. Bertelsens contend that under this statute and Allstate's policy incorporating state coverage requirements, Allstate had a duty to immediately pay its benefits because it knew AIG had denied Bonnie workers' compensation coverage. Bertelsens finally contend that in light of this statute, Allstate's letter promising to investigate and resolve the matter, and Allstate's failure to pay benefits, Allstate handled the claim in bad faith.

*Decision*

[¶11.]     In reviewing the circuit court's summary judgment, we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and established entitlement to judgment on the merits as a matter of law. *See* Clark County v. Sioux Equip. Corp, 2008 SD 60, ¶8, 753 NW2d 406, 409 (quoting Behrens v. Wedmore, 2005 SD 79, ¶18, 698 NW2d 555, 565). This case involves construction of both the insurance contract and SDCL 62-1-1.3. "The construction of a written contract is a question of law." Discover Bank v. Stanley, 2008 SD 111, ¶17, 757 NW2d 756, 762. Similarly, the construction of statutes is a question of law. Yellow Robe v. Bd. of Trustees of SD Retirement Sys., 2003 SD 67, ¶10, 664 NW2d 517, 519. We review questions of law under the de novo standard of review. *Id.*

[¶12.]     On the breach of contract claim, Bertelsens rely on Allstate's policy provision that required it to provide benefits in conformance with state

-4-

requirements;[2] in this case, the requirements of SDCL 62-1-1.3, a workers'
compensation statute. The statute provides in relevant part:

> *If an employer denies coverage of a claim* on the basis that the
> injury is not compensable under this title . . . such injury *is
> presumed to be nonwork related for other insurance purposes*,
> and *any other insurer covering bodily injury* . . . of the injured
> employee *shall pay* according to the policy provisions.

SDCL 62-1-1.3 (emphasis added). Although Bertelsens acknowledge that they were
eventually paid most of their medical expenses from the other insurers, they claim
Allstate breached this statutory obligation to immediately pay its medical benefits
from the time Bertelsens filed their claim (February 2006) to the date AIG reversed
its denial of workers' compensation coverage (January 2008).[3] We agree.

[¶13.]    In construing statutes such as SDCL 62-1-1.3:

> [W]e adhere to two primary rules of statutory construction. The
> first rule is that the language expressed in the statute is the
> paramount consideration. The second rule is that if the words
> and phrases in the statute have plain meaning and effect, we
> should simply declare their meaning and not resort to statutory
> construction.

---

2.    Allstate's policy incorporated South Dakota coverage requirements by
providing, "[w]hen any policy provision is in conflict with the law of the state
in which the insured auto is principally garaged, the minimum requirement
of the law of the state apply."

3.    Bertelsens also contend that summary judgment was improperly granted
because industry standards required Allstate to first pay medical payments
and then seek reimbursement from the workers' compensation insurer.
Although Bertelsens introduced no such industry standards, they argue an
inference exists that industry standards were violated because Hartford and
Avera paid their benefits before resolving the workers' compensation
coverage issue. Because Bertelsens offered no evidence of any industry
standard, we disagree with their summary judgment contention on this
record. Further, we need not reach that issue in light of SDCL 62-1-1.3.

*Clark County*, 2008 SD 60, ¶28, 753 NW2d at 417. The language of SDCL 62-1-1.3 plainly requires that "any insurer covering bodily injury . . . shall pay" policy benefits when workers' compensation coverage is denied. By referring to bodily injury insurers, it appears that this immediate obligation is imposed so the injured employee can be treated for their physical injuries while the insurers resolve coverage disputes.

[¶14.]     In this case, Allstate was an "insurer" that provided coverage for "bodily injury."[4] Furthermore, Allstate's policy required that it provide coverage in accordance with South Dakota requirements. Thus, once Allstate learned that AIG had denied coverage, Allstate had a contractual/statutory duty to immediately pay its benefits and resolve workers' compensation coverage and subrogation issues at a later date. As previously noted, both Hartford and Avera had similar workers' compensation exclusions, yet both complied with SDCL 62-1-1.3 by immediately paying their policy benefits.

[¶15.]     Although Allstate argues that SDCL 62-1-1.3 is limited to *health* insurance carriers, the qualifying words "health insurance" do not appear in the statute. Rather, the statute plainly and unambiguously applies to "*any* other insurer" covering bodily injury. Notwithstanding this plain language, Allstate contends that legislative history regarding SDCL 62-1-1.3 (the title of the act) indicates that the statute applies only to the interaction between workers' compensation insurance and health insurance. This Court does not, however,

---

4.     Allstate's policy provided coverage for medical payments when "bodily injury is caused by a motor vehicle accident[.]"

review legislative history when the language of the statute is clear. *Clark County,* 2008 SD 60, ¶28, 753 NW2d at 417 (restating that when a statute's words "have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction").

[¶16.] Alternatively, Allstate argues that Bertelsens have no private cause of action under SDCL 62-1-1.3. They point out that another part of the statute provides, "[i]f coverage is denied by an insurer without a full explanation of the basis in the insurance policy in relation to the facts or applicable law for denial, the director of the Division of Insurance may determine such denial to be an unfair practice under chapter 58-33, [South Dakota's Unfair Trade Practice Act (SDUTPA)]." SDCL 62-1-1.3. *See also* SDCL 58-33-65.1 (providing that individuals have no right to enforce these provisions through a private cause of action); SDCL 58-33-67.7 and 68 (providing that the Division of Insurance has the authority to investigate unfair insurance trade practices, such as, "refusing to settle a claim of an insured or claimant on the basis that the responsibility should be assumed by others"). From these statutory provisions, Allstate argues that a failure to comply with SDCL 62-1-1.3 is a matter to be addressed by the Division of Insurance to the exclusion of the Bertelsens.

[¶17.] We disagree because Bertelsens' cause of action was not brought under the SDUTPA. Instead, Bertlesens sued for breach of their own insurance contract. Therefore, even if Bertelsens did not have a cause of action to enforce the SDUTPA, the lack of a SDUTPA cause of action was not a defense to Bertelsens' independent

cause of action for breach of their own insurance contract.[5] We conclude that Allstate breached its contractual/statutory duty of immediate payment under SDCL 62-1-1.3.

[¶18.] The circuit court also ruled that it did not appear that Bertelsens would be able to show actual or consequential damages because their medical bills had been paid. There is, however, a disputed issue of material fact concerning this matter. Bertelsens indicated in their response to Allstate's statement of undisputed material facts that they still had $4,144.78 in unreimbursed medical expenses arising from the accident. Because this response created a material issue of disputed fact regarding damages, and because Allstate breached its immediate payment duty, summary judgment was incorrectly granted on Bertelsens' breach of contract cause of action.

[¶19.] Bertelsens also sought punitive damages alleging the tort of bad faith. The circuit court dismissed, concluding that the coverage issue was fairly debatable. On appeal, Allstate relies on that ruling, arguing that it cannot be liable for bad faith because the application of SDCL 62-1-1.3 to an automobile insurer is a case of first impression for this Court.

[¶20.] Although we have dismissed bad faith claims because they involve legal issues of first impression, they were dismissed because, as the circuit court noted, the issue was fairly debatable. *See* Mudlin v. Hills Materials Co., 2007 SD 118, ¶15, 742 NW2d 49, 54; Phen v. Progressive N. Ins. Co., 2003 SD 133, ¶¶24-25,

---

5. For the same reason, the SDUTPA does not bar Bertelsens' independent cause of action for the tort of bad faith.

672 NW2d 52, 59. Unlike those cases, however, the language of SDCL 62-1-1.3 is plain, unambiguous, and not susceptible to debate. Upon denial of workers' compensation coverage, all other insurers providing bodily injury coverage "shall pay" their benefits. Therefore, Allstate's obligation was clear from the statutory language alone, and an interpretive decision from this Court was not necessary for Allstate to have determined its duty under its policy.

[¶21.] We also observe that a disputed issue of material fact remains concerning Allstate's intent in failing to pay its benefits. As previously indicated, Allstate's letter to Bonnie's attorney promised that it would investigate AIG's failure to provide workers' compensation coverage, and that Allstate would move quickly to resolve Bonnie's claim. Bertelsens alleged, and Allstate did not dispute, that Allstate did nothing for approximately two years. This assertion, coupled with Allstate's letter and SDCL 62-1-1.3, create an issue of fact regarding Allstate's good faith in handling this claim.

*Conclusion*

[¶22.] Allstate breached its contractual and statutory duty to immediately pay medical benefits for bodily injury after Bonnie's workers' compensation claim was denied. Further, genuine issues of material fact preclude summary judgment on contract damages. Genuine issues of material fact also remain on Bertelsens' bad faith claim. We reverse and remand for further proceedings consistent with this opinion.

[¶23.] GILBERTSON, Chief Justice, and KONENKAMP and MEIERHENRY, Justices, and SABERS, Retired Justice, concur.