#26442-aff in part, rev in pt & rem-SLZ

**2013 S.D. 44**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

BONNIE J. BERTELSEN,                                    Plaintiff and Appellee,

v.

ALLSTATE INSURANCE COMPANY,
AN INSURANCE CORPORATION,                    Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICIA C. RIEPEL
Judge
\* \* \* \*

MICHAEL W. STRAIN of
Morman Law Firm
Sturgis, South Dakota

and

PAUL T. BARNETT
SCOTT G. HOY
JAMES L. HOY of
Hoy Trial Lawyers, Prof., LLC
Sioux Falls, South Dakota                          Attorneys for plaintiff
                                                                  and appellee.


CATHERINE M. SABERS
THOMAS G. FRITZ of
Lynn, Jackson, Shultz & Lebrun, PC
Rapid City, South Dakota                           Attorneys for defendant
                                                                  and appellant.

\* \* \* \*

ARGUED FEBRUARY 12, 2013

OPINION FILED **06/12/13**

#26442

ZINTER, Justice

[¶1.]     Bonnie Bertelsen sued Allstate Insurance Company for breach of contract and bad faith arising out of Allstate's failure to timely pay medical benefits under Bertelsen's personal automobile insurance policy. On the breach of contract claim, the circuit court granted a judgment as a matter of law for $33,000. On the bad faith claim, the jury awarded $150,000 in compensatory damages and $1,500,000 in punitive damages. Allstate appeals. We affirm in part, reverse in part, and remand for a new trial.

*Facts and Procedural History*

[¶2.]     This case has been before us on two prior occasions: *Bertelsen v. Allstate Insurance Co. (Bertelsen I)*, 2009 S.D. 21, 764 N.W.2d 495, and *Bertelsen v. Allstate Insurance Co. (Bertelsen II)*, 2011 S.D. 13, 796 N.W.2d 685. As we noted in those opinions, Bertelsen was employed by Universal Pediatric Services (UPS) as an in-home registered nurse. On December 26, 2006, she was injured in an automobile accident while driving her employer's vehicle to a patient's home to perform her nursing duties. Bertelsen spent six weeks in the hospital recovering from life-threatening injuries. She underwent numerous surgeries, lost eight months of work, and incurred $382,849.92 in medical expenses as a result of the accident.

[¶3.]     Bertelsen filed a claim for worker's compensation benefits (including medical expenses) with American International Group (AIG), her employer's worker's compensation carrier. AIG denied the claim on January 10 and February 7, 2006. AIG contended that Bertelsen's injuries had not arisen out of and in the course of her employment with UPS.

[¶4.]    Bertelsen had a personal automobile insurance policy with Allstate that provided $100,000 in medical payments coverage. In February 2006, Bertelsen advised Allstate that AIG had denied her worker's compensation claim, and she filed a medical payments claim with Allstate. Bertelsen provided Allstate with her AIG claim number as well as the AIG claims adjuster's name and contact information. Allstate subsequently spoke with AIG's claims adjuster, confirmed the denial, and noted the basis for AIG's denial in Allstate's claim file. Allstate then requested written proof of loss. Bertelsen provided Allstate with her medical records and bills, which by that time exceeded Allstate's policy limits. Bertelsen demanded the $100,000 policy limits for medical payments, but Allstate continued to investigate Bertelsen's claim into the spring of 2006.

[¶5.]    Contrary to its claims manual, Allstate raised a worker's compensation exclusion in its policy for the first time in a June 2006 letter to Bertelsen.[1] By that time, Bertelsen's medical expenses were approaching $300,000. The letter also contained another request for the AIG claims adjuster's name and contact information. Allstate indicated that it was going to investigate AIG's denial of Bertelsen's worker's compensation claim. The letter stated: "Rest assured, once investigation is complete and all available coverage is exhausted, Allstate will move quickly to resolve [Bertelsen's] claim."

---

1.    Allstate's claims manual required immediate notice to policyholders of any coverage issue.

[¶6.] Bertelsen's attorney at that time, Thomas Blake, promptly sent Allstate the AIG claims adjuster's name and contact information.[2] At trial, the parties disputed whether Allstate contacted Bertelsen following receipt of this information. Bertelsen alleged that Allstate failed to further investigate AIG's denial and did not contact her until approximately one year later. Allstate denied these allegations. Norm Tierney, an Allstate claims adjuster, testified that he contacted Blake on June 26, 2006. He contended that Blake agreed to suspend Bertelsen's claim with Allstate to pursue the worker's compensation claim. Although Allstate conceded that the phone call was not documented in its claim file, Allstate introduced a call log indicating that a call was placed from Randall Blake's[3] office to Allstate's 800 telephone number on July 13, 2006. Thomas Blake, however, denied that any phone conversation occurred with Tierney.

[¶7.] By the spring of 2007, Bertelsen had not received medical payments benefits from Allstate, and she was experiencing increasing demands for payment from medical providers. On December 19, 2007, Bertelsen filed a petition with the South Dakota Department of Labor formally seeking worker's compensation benefits. AIG answered Bertelsen's petition on January 22, 2008, and for the first time admitted coverage for "all past, present, and future medical, hospital, and

---

2. Thomas Blake did not represent Bertelsen in these breach of contract and bad faith suits.

3. Randall Blake, Thomas Blake's brother, was an attorney who handled personal injury cases in Sioux Falls. Although Randall Blake and Thomas Blake shared a fax line prior to March 2005, they had separate offices and telephone lines.

health care expenses for her work-related injury." Bertelsen later settled her worker's compensation claim with AIG for $150,000.

[¶8.] Bertelsen also settled claims with other insurers. She received medical payments benefits in the amount of $30,000 (the policy limits) from UPS's automobile insurer, Hartford Insurance Company. She also settled an underinsured motorist claim with Hartford for $900,000. Bertelsen settled a liability claim with State Farm, the negligent tortfeasor's automobile insurance company, for $100,000. Additionally, she received $157,433.87 in medical expense coverage from Avera Health, her health insurer. Bertelsen's other health insurers, Sanford Health Plan and Blue Cross of California, paid additional health benefits. Ultimately, Bertelsen recovered approximately $1.2 million from these insurers. After subrogation and the payment of medical bills, she retained approximately $660,000. Bertelsen, however, claimed that she was also entitled to the $100,000 policy limits from Allstate under the medical payments provision of Allstate's automobile policy.

[¶9.] In December 2007, Bertelsen initiated this breach of contract and bad faith action. Relying on SDCL 62-1-1.3,[4] she alleged that Allstate breached the

_____

4. SDCL 62-1-1.3 provides:

> If an employer denies coverage of a claim on the basis that the injury is not compensable under this title due to the provisions of subsection 62-1-1(7)(a), (b), or (c), such injury is presumed to be nonwork related for other insurance purposes, and any other insurer covering bodily injury or disease of the injured employee shall pay according to the policy provisions. If coverage is denied by an insurer without a full explanation of the basis in the insurance policy in relation to the facts or applicable law for
>
> (continued . . .)

insurance contract by failing to pay medical benefits immediately after learning that AIG initially denied her worker's compensation claim. Bertelsen contended that Allstate's failure to immediately pay medical benefits was "frivolous," "unfounded," and constituted bad faith. She also contended that Allstate's alleged bad faith caused her emotional distress up to the point in time when she began receiving settlements from the other insurance carriers.

[¶10.]    In *Bertelsen I,* we reversed a circuit court decision granting summary judgment in favor of Allstate. 2009 S.D. 21, ¶ 22, 764 N.W.2d at 501. On the breach of contract claim, we held that "Allstate breached its contractual and statutory duty to immediately pay medical benefits for bodily injury after [Bertelsen]'s workers' compensation claim was denied." *Id.* On the bad faith claim, we held that Allstate's duty was not fairly debatable because "Allstate's obligation was clear from the statutory language alone[.]" *Id.* ¶ 20. Because genuine issues of material fact remained, we remanded the matter for a trial to determine contract damages and Allstate's intent in failing to pay benefits. *Id.* ¶ 22.

[¶11.]    On remand, a jury awarded Bertelsen $33,000 for breach of contract, but the jury rejected her bad faith claim.[5] Bertelsen appealed that decision, and in

---

(. . . continued)

denial, the director of the Division of Insurance may determine such denial to be an unfair practice under chapter 58-33. If it is later determined that the injury is compensable under this title, the employer shall immediately reimburse the parties not liable for all payments made, including interest at the category B rate specified in § 54-3-16.

5.    In June 2010, Allstate paid Bertelsen $51,127.36, which included the $33,000 award, prejudgment interest, and costs. According to an agreement entered

(continued . . .)

*Bertelsen II* we concluded that instructional and evidentiary errors required a new trial. 2011 S.D. 13, ¶ 62, 796 N.W.2d at 705-06. We held that the jury should have been instructed that Allstate breached its contractual and statutory duty to pay medical benefits immediately after it learned AIG had denied Bertelsen's worker's compensation claim. *Id.* ¶ 32. With respect to bad faith, we concluded that genuine issues of material fact remained regarding Allstate's intent in failing to timely pay benefits. *Id.* ¶ 62. We also held that Bertelsen should have been allowed to develop an evidentiary record on punitive damages. *Id.* ¶ 41. We remanded for a new trial on the issues of contract damages, bad faith, and punitive damages. *Id.* ¶ 62.

[¶12.] On remand from *Bertelsen II*, the matter was assigned to Judge Riepel. The contract and bad faith claims were bifurcated from the punitive damages claim. Over Allstate's objection, the circuit court refused to allow the jury to hear evidence that in 2008, AIG accepted the worker's compensation claim. The court also refused to allow the jury to hear evidence of the settlements with other insurers and Bertelsen's pre-accident bankruptcy. At the close of evidence, the court granted Bertelsen's motion for judgment as a matter of law on contract damages and awarded $33,000. Allstate's motions for judgment as a matter of law on the bad faith and punitive damages claims were denied. The jury returned a verdict of $150,000 in compensatory damages and $1,500,000 in punitive damages.

[¶13.] After trial, Bertelsen argued that as a matter of law she was entitled to an additional $67,000 on the breach of contract claim. She contended that the

_____

(. . . continued)
by the parties, the purpose of paying the judgment was to stop the accrual of post-judgment interest.

additional amount was necessary to reach a total award of the $100,000 policy limits because Allstate was estopped from asserting its subrogation rights. Bertelsen also moved for attorney's fees of $534,230. Allstate renewed its motions for judgment as a matter of law. In the alternative, Allstate moved for a new trial or remittitur. The circuit court denied Allstate's motions, granted Bertelsen's request for a judgment equivalent to the $100,000 policy limits, and awarded Bertelsen $180,561.51 in attorney's fees.

[¶14.] Allstate raises numerous issues on appeal. We address: (1) whether the circuit court erred in denying Allstate's motions for judgment as a matter of law on the bad faith and punitive damages claims; (2) whether the circuit court erred in excluding evidence that AIG accepted the worker's compensation claim in 2008; and (3) whether the circuit court erred in awarding Bertelsen attorney's fees. Because we are remanding for a new trial, we also address some evidentiary and instructional issues that are likely to arise again. In light of the new trial, we do not reach Allstate's other issues.[6]

---

6. One of those other issues is the circuit court's award of $100,000 in contract damages. Allstate argues that the court erred in supplementing the $33,000 jury award to reach the $100,000 policy limits. The court reasoned that Allstate waived or was estopped from asserting its subrogation rights. In *Bertelsen II*, we determined that in certain instances an insurer may waive its right to subrogation or be estopped from asserting its right to subrogation if it unreasonably delayed payment.

> We agree that an insurer should not escape liability for breach of contract when it has acted in bad faith or unreasonably delayed the payment of benefits. An insurer may thus waive the right to subrogation or be estopped from asserting it when it has unreasonably delayed the payment of benefits.

(continued . . .)

*Decision*

*Allstate's Motions for Judgment as a Matter of Law*

[¶15.]     Allstate argues that the circuit court abused its discretion in denying Allstate's renewed motion for judgment as a matter of law on the bad faith claim. Allstate contends that there was insufficient evidence to support bad faith. Allstate specifically contends that Bertelsen's evidence only reflected mistakes, errors in judgment, sloppy business practices, or negligence. It further contends that it could not have acted in bad faith because its primary claims adjuster was unaware of SDCL 62-1-1.3, the statute requiring immediate payment from Allstate. Allstate also challenges the court's ruling on its motion for judgment as a matter of law on the punitive damages claim. Allstate argues that there was insufficient evidence of malice to support punitive damages.

[¶16.]     This Court reviews both a motion for judgment as a matter of law and a renewed motion for judgment as a matter of law for an abuse of discretion. *Jacobs v. Dakota, Minn. & E. R.R. Corp.*, 2011 S.D. 68, ¶ 9, 806 N.W.2d 209, 212; *Selle v. Tozser*, 2010 S.D. 64, ¶ 14, 786 N.W.2d 748, 752. We "view the evidence and

---

(. . . continued)

. . .

> The issue of contract damages is thus related to [Bertelsen's] bad faith claim. . . . Allstate's intent in failing to pay medical benefits is an important factor in deciding whether Allstate is estopped from asserting its subrogation rights.

2011 S.D. 13, ¶¶ 23-24, 796 N.W.2d at 694. Because we are remanding Bertelsen's bad faith claim for a new trial, and because Allstate's intent in failing to pay medical benefits is an important factor in determining waiver and estoppel, we do not reach Allstate's argument on the court's $100,000 breach of contract award.

testimony in a light most favorable to the verdict." *Jacobs*, 2011 S.D. 68, ¶ 9, 806 N.W.2d at 212. "Then, 'without weighing the evidence, the [C]ourt must decide if there is evidence which would have supported or did support a verdict.'" *Selle*, 2010 S.D. 64, ¶ 14, 786 N.W.2d at 752 (quoting *Alvine Family Ltd. P'ship v. Hagemann*, 2010 S.D. 28, ¶ 18, 780 N.W.2d 507, 512). "If sufficient evidence exists so that reasonable minds could differ, [judgment as a matter of law] is not appropriate." *Roth v. Farner-Brocken Co.*, 2003 S.D. 80, ¶ 8, 667 N.W.2d 651, 659 (quoting *In re Estate of Holan*, 2001 S.D. 6, ¶ 9, 621 N.W.2d 588, 591). "In resolving sufficiency of evidence issues on appeal, this [C]ourt should examine the record to determine only if there is competent and substantial evidence to support the verdict." *Id.* ¶ 20 (quoting *Kjerstad v. Ravellette Publ'ns, Inc.*, 517 N.W.2d 419, 424 (S.D. 1994)). "All conflicts are resolved and all reasonable inferences are drawn in favor of the prevailing party." *Id.*

*Bad Faith*

[¶17.] To prevail on a bad faith cause of action, "a claimant must demonstrate that the claim was denied with knowledge of the absence of a reasonable basis for the denial or in reckless disregard of whether a reasonable basis existed." *McDowell v. Citicorp U.S.A.*, 2007 S.D. 53, ¶ 15, 734 N.W.2d 14, 19 (citing *Champion v. U.S. Fid. & Guar. Co.*, 399 N.W.2d 320, 324 (S.D. 1987)). However, "an insurance company . . . may challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Dakota, Minn. & E. R.R. Corp. v. Acuity*, 2009 S.D. 69, ¶ 17, 771 N.W.2d 623, 629 (quoting *Walz v. Fireman's Fund Ins. Co.*,

1996 S.D. 135, ¶ 7, 556 N.W.2d 68, 70). When evaluating whether an insurer has engaged in bad faith, we must look to "the facts and law available to [the] [i]nsurer at the time it made the decision to deny coverage." *Id.* ¶ 19 (alteration in original). "The question of whether an insurer has acted in bad faith is generally a question of fact." *Id.*

[¶18.] In *Bertelsen I*, we determined that Allstate's statutory duty to Bertelsen was not "fairly debatable." 2009 S.D. 21, ¶ 20, 764 N.W.2d at 501 ("[T]he language of SDCL 62-1-1.3 is plain, unambiguous, and not susceptible to debate. . . . Allstate's obligation was clear from the statutory language alone, and an interpretive decision from this Court was not necessary for Allstate to have determined its duty under its policy."). Thus, we must review the factual record to determine whether there was sufficient evidence for the jury to find that Allstate delayed payment with knowledge of the absence of a reasonable basis to delay payment or in reckless disregard of the absence of a reasonable basis to delay payment.

[¶19.] The evidence was sufficient to support the bad faith verdict. Bertelsen introduced evidence showing that she advised Allstate of AIG's denial and provided Allstate with AIG's claims adjuster's name and contact information. Thereafter, Allstate contacted AIG's claims adjuster, confirmed the denial, and noted the basis for the denial in its claim file. There is also record evidence that Bertelsen provided proof of loss information and Allstate promised to promptly investigate the claim. Yet, under Bertelsen's version of the evidence, there were no further communications between the parties for approximately one year. This was

sufficient evidence for the jury to find that Allstate knew of or recklessly disregarded its obligation to immediately process and pay the claim after it learned of AIG's denial.

[¶20.]     Allstate, however, points out that while Blake was communicating with Tierney, Blake never claimed that Allstate engaged in inappropriate delay or wrongful conduct, and Blake never mentioned SDCL 62-1-1.3. These facts do not support Allstate's argument. In *Walz v. Fireman's Fund Insurance Co.*, we held that an "[i]nsurer cannot rely upon claimants to provide a copy of legal authority, especially in the absence of a request." 1996 S.D. 135, ¶ 13, 556 N.W.2d at 72. We further observed that the insurer "could have contacted legal counsel or even consulted a table of cases to obtain the [controlling law]." *Id.* Accordingly, Allstate cannot escape liability solely because it may have been unaware of SDCL 62-1-1.3. Because there was sufficient evidence to support the bad faith verdict, the circuit court did not err in denying Allstate's motion for judgment as a matter of law.

*Punitive Damages*

[¶21.]     Allstate argues that there was insufficient evidence of malice to support the punitive damages verdict. Allstate contends that Bertelsen failed to present evidence that Allstate acted with "a conscious realization that [its] conduct would in all probability . . . harm [Bertelsen]."

[¶22.]     "Malice is an essential element of a claim for punitive damages." *Selle*, 2010 S.D. 64, ¶ 30, 786 N.W.2d at 757 (quoting *Isaac v. State Farm Mut. Auto. Ins. Co.*, 522 N.W.2d 752, 761 (S.D. 1994)). "Malice can be actual (malice in fact) or presumed (legal malice)." *Id.* "A showing of either type is sufficient to support

punitive damages." *Id.* Whereas, "[a]ctual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person[;]" presumed malice can be "infer[ed] from or impute[d] to certain acts." *Id.* Accordingly, even in the absence of hatred or ill-will, "malice may . . . be imputed if [Allstate] act[ed] willfully or wantonly to the injury of [Bertelsen]." *See id.* Although merely engaging in an "injurious act is not sufficient to constitute presumed malice[,] . . . [a] claim for presumed malice can be shown by demonstrating a disregard for the rights of others." *Id.* (internal citation and quotation marks omitted).

[¶23.] At trial, Bertelsen presented evidence that Allstate did not contact her for one year after it promised to investigate AIG's denial and promptly resolve her claim. Allstate responded, claiming that Tierney contacted Blake in late June 2006. To support its argument, Allstate introduced a call log, which indicated that a call was placed from Randall Blake's office to Allstate's 800 telephone number on July 13, 2006. Bertelsen disputed Allstate's response, noting that the call log showed the alleged phone call was placed from the wrong line on the wrong date. Whether Tierney timely contacted Blake was important in determining whether there was presumed malice. It was also a dispute of fact for the jury. "Factual disputes generally prohibit granting a judgment as a matter of law." *Alvine Family Ltd. P'ship*, 2010 S.D. 28, ¶ 19, 780 N.W.2d at 513. Accordingly, the circuit court did not abuse its discretion in denying Allstate's motion for judgment as a matter of law on the punitive damages claim.

*AIG's Acceptance of Bertelsen's Worker's Compensation Claim*

[¶24.]     Allstate argues that the circuit court abused its discretion in excluding evidence that AIG accepted Bertelsen's worker's compensation claim in January 2008.[7] Allstate points out that Bertelsen repeatedly argued and presented testimony to support her bad faith claim that "*[t]o this day* [the time of trial in 2012], Allstate ha[d] not paid a dime towards [Bertelsen]'s medical bills." (Emphasis added.)  To respond, Allstate attempted to introduce evidence establishing that by January 2008, AIG had accepted the worker's compensation claim and agreed to pay all of Bertelsen's past, present, and future medical expenses.  Under Allstate's policy, AIG's acceptance of the worker's compensation claim would have relieved Allstate of any further duty to pay medical benefits.  Therefore, AIG's acceptance of the worker's compensation claim would have justified Allstate's failure to pay medical benefits during the four years between AIG's acceptance of the claim in 2008 and the time of trial in 2012.

[¶25.]     The circuit court denied Allstate's offer.  The court ruled that the parties could only mention that the worker's compensation claim had been "resolved" (at an undisclosed time) and that Bertelsen's medical bills were paid by other insurers.  To the court, the date and details of AIG's acceptance were

---

7.     "[W]e afford broad discretion to circuit courts in deciding whether to admit or exclude evidence." *Surgical Inst. of S.D., P.C. v. Sorrell*, 2012 S.D. 48, ¶ 16, 816 N.W.2d 133, 139 (quoting *Ronan v. Sanford Health*, 2012 S.D. 6, ¶ 8, 809 N.W.2d 834, 836).  "The trial court's evidentiary rulings are presumed correct and will not be overturned absent a clear abuse of discretion.  An abuse of discretion refers to a discretion exercised to an end or purpose not justified by, and clearly against reason and evidence." *Id.* (quoting *St. John v. Peterson*, 2011 S.D. 58, ¶ 10, 804 N.W.2d 71, 74).

irrelevant because the breach occurred when Allstate did not pay benefits to Bertelsen in 2006, as required by SDCL 62-1-1.3. But Allstate maintains that the court's ruling erroneously allowed the jury, in determining whether Allstate acted in bad faith, to believe that it could consider Allstate's failure to pay for the four years from 2008 through the 2012 trial. We agree with Allstate.

[¶26.] Allstate's policy specifically excluded medical payments coverage "to the extent that the treatment [was] covered under any workers' compensation law." Accordingly, once AIG accepted liability and agreed to pay all of Bertelsen's past and future medical expenses in January 2008, Allstate was no longer violating any duty to pay Bertelsen's medical expenses. Yet Bertelsen repeatedly asserted that "[t]o this day, Allstate has not paid a dime towards [Bertelsen]'s medical bills." Although AIG's acceptance of the worker's compensation claim in 2008 may not have been relevant to Allstate's initial breach of contract, the evidence was critical to the issue whether Allstate acted in bad faith and was liable for punitive damages for its conduct from 2008 through the 2012 trial. The court abused its discretion in excluding AIG's January 2008 acceptance of the worker's compensation claim. We reverse and remand for a new trial.[8]

---

8. Allstate also appeals the circuit court's exclusion of evidence of Bertelsen's pre-accident bankruptcy and settlements with other insurers. Allstate claims Bertelsen's pre-accident bankruptcy was relevant to impeach Blake's denial that he led Allstate to believe it could withhold payment while Blake pursued the worker's compensation claim. Allstate also claims that the bankruptcy was relevant to impeach Blake's credibility and explanation why he held a $100,000 check from State Farm in his desk drawer for approximately one year. Allstate finally claims that Bertelsen's settlements with other insurers were relevant to prove that Bertelsen was fully compensated for the injuries she sustained in the accident. Although this evidence was admitted in the

(continued . . .)

*Attorney's Fees*

[¶27.]     The circuit court granted a judgment as a matter of law for $33,000 in contract damages, and Allstate does not appeal that decision.  Allstate does, however, appeal the court's award of attorney's fees incurred in obtaining the contract damages.  Allstate contends the court erred in awarding Bertelsen any attorney's fees.  In the alternative, Allstate contends the award was excessive.

[¶28.]     "[A]ttorney fees may only be awarded by contract or when specifically authorized by statute." *Biegler v. Am. Family Mut. Ins. Co.*, 2001 S.D. 13, ¶ 56, 621 N.W.2d 592, 606.  "The party requesting an award of attorneys' fees has the burden to show its basis by a preponderance of the evidence." *Arrowhead Ridge I, LLC v. Cold Stone Creamery, Inc.*, 2011 S.D. 38, ¶ 25, 800 N.W.2d 730, 737.

[¶29.]     Bertelsen requested attorney's fees under SDCL 58-12-3, which authorizes the recovery of attorney's fees if the insurer's refusal to pay was

---

(. . . continued)

first trial, the court excluded the evidence in the second trial.  The court ruled that Bertelsen's pre-accident bankruptcy was more prejudicial than probative, and it could not be used for impeachment because there was no expert testimony explaining the effect that the bankruptcy might have had on holding the State Farm check.  The court finally ruled that Bertelsen's settlements with other insurers were not relevant and/or were inadmissible under SDCL 19-12-10 (Rule 408).

We have concerns with the circuit court's SDCL 19-12-10 (Rule 408) ruling.  Allstate did not offer evidence of Bertelsen's settlements with other insurers "to prove liability for or invalidity of the [bad faith claim] claim or its amount." *See id.*  With respect to the court's other rulings, the admissibility of Bertelsen's pre-accident bankruptcy and her settlements with other insurers is dependent upon the issues presented and the nature of the evidence introduced at trial.  On remand, the court will have to determine the relevancy and the prejudice versus probative value questions in the context of the evidence presented.

"vexatious or without reasonable cause." "[T]he obvious objective of SDCL 58-12-3 is to discourage contesting insurance coverage and to reimburse an insured for any reasonable attorney's fees necessarily incurred in defending or enforcing a valid insurance contract right." *Tripp v. W. Nat'l Mut. Ins. Co.*, 664 F.3d 1200, 1205 (8th Cir. 2011) (quoting *All Nation Ins. Co. v. Brown*, 344 N.W.2d 493, 494 (S.D. 1984)). The statute is "given a liberal construction with a view to effect its objects and to promote justice." *Id.*

[¶30.] "Before attorney's fees may be awarded under [SDCL 58-12-3], the trial court must find 'that the insurance company refused to pay the full amount of the insured's loss and that [the] refusal was either vexatious or without reasonable cause.'" *Sawyer v. Farm Bureau Mut. Ins. Co.*, 2000 S.D. 144, ¶ 29, 619 N.W.2d 644, 651-52 (quoting *Brooks v. Milbank Ins. Co.*, 2000 S.D. 16, ¶ 17, 605 N.W.2d 173, 178). The court must also determine "what is a reasonable charge for the work performed . . . ." *Biegler*, 2001 S.D. 13, ¶ 56, 621 N.W.2d at 606.

[¶31.] Proof of bad faith does not necessarily entitle a claimant to recover attorney's fees under SDCL 58-12-3. *Id.* ¶ 58 ("[A] finding of bad faith on the part of an insurance company does not mean 'ipso facto' that its conduct was vexatious or without reasonable cause[.]"); *Crabb v. Nat'l Indem. Co.*, 87 S.D. 222, 233, 205 N.W.2d 633, 639 (1973) ("[A] finding that an insurer lacked good faith does not signify its conduct was 'vexatious or without reasonable cause,' as a matter of law."). Moreover, "[p]ursuant to SDCL 58-12-3, attorney's fees are allowed only in an action against an insurer based upon the policy." *Sawyer*, 2000 S.D. 144, ¶ 31, 619 N.W.2d at 652. Consequently, "the portion of attorney's fees related to the bad faith

claim, as opposed to the contractual claim, should [be] excluded." *Isaac*, 522 N.W.2d at 763.

[¶32.] In this case, Bertelsen initially submitted a request for $534,230 in attorney's fees. This request did not segregate the time spent pursuing the contract, bad faith, and punitive damage claims. The circuit court subsequently ordered Bertelsen to submit an itemized billing and instructed Allstate to submit specific objections. Bertelsen submitted an itemized billing totaling 121 pages. The itemization contains time entries showing the hours expended and services performed by Bertelsen's attorneys. Allstate's response includes a specific objection for each time entry challenged. The court reviewed the submissions and issued a memorandum decision, findings of fact and conclusions of law, and order awarding Bertelsen a reduced fee award of $180,561.51. In concluding that Bertelsen was entitled to attorney's fees under SDCL 58-12-3, the court found that Allstate's breach was without reasonable cause and that the fees awarded were reasonable.

[¶33.] Allstate first argues that the evidence was insufficient to find that its refusal to pay benefits was without reasonable cause. Allstate contends the attorney's fees award improperly "hinged on the bad faith verdict."

[¶34.] In *Bertelsen II*, we concluded that Allstate breached the insurance contract as a matter of law. 2011 S.D. 13, ¶ 21, 796 N.W.2d at 694. We must now determine whether the circuit court clearly erred in finding that Allstate's breach was without reasonable cause. *See Biegler*, 2001 S.D. 13, ¶ 58, 621 N.W.2d at 606 ("Whether [the insurer]'s conduct was vexatious or without reasonable cause is a question of fact, reviewed by this [C]ourt under the clearly erroneous standard.").

[¶35.]     In determining that Allstate's refusal to pay was without reasonable cause, the circuit court examined Allstate's pre-litigation conduct, noting that "Bertelsen notified Allstate that other insurance coverage had been exhausted and [that] [Bertelsen] sought the $100,000 under her policy with Allstate." The court also listened to the evidence and judged the credibility of the witnesses supporting and opposing Allstate's justification for its failure to immediately pay benefits. Considering the conflicting evidence and the court's superior position to resolve those conflicts, we find no clear error in the court's finding that Allstate did not have reasonable cause to fail to timely pay benefits.

[¶36.]     Allstate also argues that the circuit court's award was excessive. Allstate contends that Bertelsen's documentation was insufficient and that the individual time entries are vague and generally do not segregate fee-recoverable claims from non-fee-recoverable claims. Allstate also contends that the court should not have awarded fees incurred after June 2010, when Bertelsen first obtained a verdict on the breach of contract claim and received $33,000 plus interest from Allstate. Alternatively, Allstate contends that Bertelsen should not have recovered attorney's fees incurred after this Court decided *Bertelsen II.* Allstate points out that, at that point, the breach of contract issue was resolved, Bertelsen pursued no additional discovery on contract damages in preparation for the second trial, and the same contract damage evidence was presented in both trials. Allstate finally contends that Bertelsen should not have recovered attorney's fees incurred after December 27, 2012, because Allstate offered Bertelsen a $225,000 settlement.

[¶37.]     We review "[t]he trial court's fee award . . . under the abuse of discretion standard." *Biegler*, 2001 S.D. 13, ¶ 60, 621 N.W.2d at 607.  If fees are awarded, they are limited to a "reasonable sum."  SDCL 58-12-3.

[¶38.]     The circuit court awarded a reasonable sum.  The court first found that $250 per hour was a reasonable rate.  The court observed that this was "a highly contentious case," in which "a great deal of time [had been] expended by Bertelsen's attorneys."  The court also considered the case to be relatively complex, which required skill and experience and likely precluded other employment by the attorneys.  The court further considered: the experience, reputation, and ability of the attorneys; the fees customarily charged in the locality; the amount involved; and the results obtained.

[¶39.]     The circuit court then examined Bertelsen's attorneys' itemized statement and limited the attorney's fees to those incurred pursuing the breach of contract claim.  Where the itemized statement did not reflect work related solely to the contract claim, Bertelsen was only awarded one-third of the requested amount.  The court explained:

> Where Bertelsen's attorneys have not specifically stated that time for work unrelated to the breach of contract has not been charged, I have reduced the amount sought by [two-thirds] in those cases where the work is so intertwined with the non-fee recoverable claims that it cannot be otherwise separated.  It is my finding that it is equitable and fair to attribute one-third of that such time to the breach of contract claim and two-thirds to the bad faith and punitive damages claims.

The court also included a spreadsheet reflecting a ruling on each itemized request.

[¶40.]     The circuit court's analysis demonstrates that it considered the reasonableness factors required by this Court.  *See Crisman v. Determan*

*Chiropractic, Inc.*, 2004 S.D. 103, ¶ 28, 687 N.W.2d 507, 514 (setting forth factors for the circuit court to consider in awarding attorney's fees). The court also painstakingly analyzed and ruled on each itemized request. The court did not abuse its discretion in awarding attorney's fees relating to the breach of contract claim. Moreover, attorney's fees were awardable after the verdict was rendered on the breach of contract claim in June 2010, after our decision in *Bertelsen II*, and after the settlement offer. Notwithstanding those occurrences, Bertelsen's claim to $100,000 in contract damages was not resolved in *Bertelsen II* and Bertelsen was required to re-prove contract damages in the last trial. Based on our review of the record, the court did not abuse its discretion in awarding attorney's fees.

*Jury Instructions*

[¶41.]     Allstate contends that the circuit court abused its discretion in instructing the jury. Our standard of review for jury instructions is well-established:

> A trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard. However, no court has discretion to give incorrect, misleading, conflicting, or confusing instructions; to do so constitutes reversible error if it is shown not only that the instructions were erroneous, but also that they were prejudicial.

*Bertelsen II*, 2011 S.D. 13, ¶ 26, 796 N.W.2d at 695. "Erroneous instructions are prejudicial when in all probability they produced some effect upon the verdict and were harmful to the substantial rights of a party." *Id.*

[¶42.]     Allstate first argues that the second paragraph of Jury Instruction 14 improperly allowed the jury to speculate whether Allstate had paid Bertelsen. This

paragraph advised the jury that "the Court has determined that Allstate breached its contractual and statutory duty to pay as a matter of law[,]" and that the jury did not need to address the issue of contract damages.[9]  To Allstate, the circuit court should have included the amount of the breach of contract award ($33,000) and the date of payment (June 2010).  We agree.  Although the jury was presented with the breach of contract evidence, the judgment as a matter of law eliminated the need for the jury to determine contract damages.  However, the payment amount and the payment date were relevant to the jury's consideration of bad faith and punitive damages.  Additionally, without knowledge of the payment, the jury was free to believe Bertelsen's argument that to the time of trial in 2012, Allstate, in bad faith, had not "paid a dime towards [Bertelsen's] medical bills[.]"  On retrial, the court should modify Instruction 14 to include the $33,000 breach of contract award and the payment date.

[¶43.]       Next, Allstate argues that the circuit court abused its discretion in refusing to supplement Jury Instruction 15 with Allstate's Proposed Jury

---

9.     Jury Instruction 14 provided:

> At all times material to this case, South Dakota law provided that when a workers' compensation claim is denied, other insurers have a statutory duty to pay their contractual benefits and resolve workers' compensation coverage and subrogation issues at a later date.

> The Court has already determined that Allstate breached its contractual and statutory duty to pay as a matter of law.  The breach of contract claim has been resolved and you need not determine the issue of damages for the breach of contract.

Instructions 16[10] and/or 17A.[11] Jury Instruction 15 informed the jury that: "Every insurance contract includes the duty of good faith and fair dealing. This duty means that neither party will *do anything to injure the rights of the other* in receiving the benefits of the agreement. The breach of that duty is called bad faith." (Emphasis added.) Allstate argues that absent further explanation – and in particular the substance of Allstate's proposed instructions – the jury could take Instruction 15 to mean that breaches of duties other than bad faith (for instance negligence) could constitute bad faith regardless of the insurer's intent. We agree.

[¶44.]     This was a suit for first-party bad faith. "First-party bad faith . . . is an intentional tort and typically occurs when an insurance company consciously engages in wrongdoing during its processing or paying of policy benefits to its insured." *Hein v. Acuity*, 2007 S.D. 40, ¶ 10, 731 N.W.2d 231, 235.

> For proof of bad faith, there must be an absence of a reasonable
> basis for denial of policy benefits or failure to comply with a duty
> under the insurance contract and the knowledge or reckless
> disregard of the lack of a reasonable basis for denial, implicit in

---

10.   Allstate's Proposed Jury Instruction 16 provided:

> An insurance company, such as Allstate, is not liable for bad
> faith where its decision on a claim constitutes an error in
> judgment, a mistake, or simply negligent [sic].

11.   Allstate's Proposed Jury Instruction 17A provided:

> An insurer does not breach its duty of good faith simply because
> it makes a mistake or acts negligently. A person or entity acts
> negligently when it fails to conduct itself as a reasonable
> prudent person or entity would under the same or similar
> circumstances. For an insurance company's conduct to
> constitute bad faith its actions must be intentional, or
> accompliashed [sic] with knowledge of or reckless disregard of a
> lack of reasonable basis for its actions.

-22-

> that test is our conclusion that the knowledge of the lack of a reasonable basis may be inferred and imputed to an insurance company where there is a reckless disregard of a lack of reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured.

*Dakota, Minn. & E. R.R. Corp.*, 2009 S.D. 69, ¶ 17, 771 N.W.2d at 629. Thus, an insurance company "will be found liable [for bad faith] only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." *Id.*

[¶45.] But Instruction 15, and particularly the last two sentences, permitted the jury to award damages for bad faith based on "anything [that would] injure the rights of the other in receiving the benefits of the agreement." Thus, under Instruction 15, the jury could have found bad faith based on breaches of duties arising from a mere error in judgment, mistake, or negligence. Accordingly, on retrial, the circuit court should qualify Instruction 15 along the lines suggested by Allstate.

[¶46.] Allstate next contends that Jury Instruction 18 unduly emphasized one piece of Bertelsen's evidence at trial. In Instruction 14, the circuit court instructed that Allstate breached its contract with Bertelsen. In Instruction 18, the court instructed that: "A clear breach of contract is strong evidence of bad faith." Citing *Wallahan v. Black Hills Elec. Co-op, Inc.*, 523 N.W.2d 417, 423 (S.D. 1994), Allstate argues that "[a] trial court errs when, through its instructions, it places undue emphasis on one piece of evidence." This Court has stated that "it is improper for the trial court to unduly emphasize one party's position or evidence." *Id.* Bertelsen, however, contends that this instruction was proper because it was a

statement taken from this Court's decision in *Bertelsen II*, 2011 S.D. 13, ¶ 32, 796 N.W.2d at 697 ("And because a clear breach of contract is strong evidence of bad faith, the trial court's failure to properly instruct the jury on Bertelsens' breach of contract claim prejudiced their substantial rights.").

[¶47.] Although Instruction 18 restated this Court's conclusion in *Bertelsen II*, we did not indicate that our legal analysis on whether prejudice resulted from instructional error should be given as a jury instruction. *Wallahan* correctly states the law that prohibits emphasizing a party's position or evidence. Contrary to *Wallahan*, Instruction 18 improperly emphasized Bertelsen's position and evidence. The instruction should not be given on retrial.

[¶48.] Allstate also argues that the circuit court erred in denying Allstate's requested instruction on the liability of a principal for punitive damages arising from the acts of an agent. Allstate requested South Dakota Pattern Jury Instruction 50-100-40, which provides:

> Punitive damages may be awarded against a principal because of an act by an agent only in the following circumstances:
>
> (1) The principal or a managerial agent authorized the doing and the manner of the agent's act; or
>
> (2) The agent was unfit and the principal or a managerial agent was reckless in employing or retaining the agent; or
>
> (3) The agent was employed in a managerial capacity and was acting in the scope of employment; or
>
> (4) The principal or managerial agent of the principal ratified or approved the agent's act.

Allstate contends this instruction should be "given as a fundamental aspect of the law of punitive damages."

[¶49.] Allstate relies on *Farmers Insurance Exchange v. Shirley*, 958 P.2d 1040 (Wyo. 1998) and *Jannotta v. Subway Sandwich Shops, Inc.*, 125 F.3d 503 (7th Cir. 1997) (applying Illinois law). In Wyoming and Illinois, as well as in numerous other jurisdictions, punitive damages cannot be assessed against a corporation for acts of its agents or employees under the theory of respondeat superior. This Court adopted that view in *Dahl v. Sittner*, 474 N.W.2d 897 (S.D. 1991).

[¶50.] In *Dahl*, this Court noted that there are generally "two theories of recovery: the scope of employment rule [respondeat superior], and the complicity rule." *Id.* at 902. After examining the justifications for the competing views, we adopted the complicity rule. *Id.* at 903. Under that rule:

> Punitive damages can properly be awarded against a master or other principal because of an act by an agent if, but only if,
>
> (a)    the principal or a managerial agent authorized the doing and the manner of the act, or
>
> (b)    the agent was unfit and the principal or a managerial agent was reckless in employing or retaining him, or
>
> (c)    the agent was employed in a managerial capacity and was acting in the scope of employment, or
>
> (d)    the principal or a managerial agent of the principal ratified or approved the act.

*Id.* (quoting Restatement (Second) of Torts § 909) (1979).

[¶51.] Allstate's requested instruction followed the rule adopted in *Dahl*.[12] Because Allstate's requested instruction correctly restated the law of punitive

---

12.    We acknowledge that *Dahl* involved an "agent" who was not an "employee" of a corporation. Nevertheless, our analysis and supporting authorities reveals that the rule adopted applies to both.

damages in South Dakota, the circuit court erred in refusing to give that instruction.

[¶52.]      Finally, in its argument to this Court, Allstate suggests that *Bertelsen I, Bertelsen II*, and the jury instructions in these cases have created ambiguity in the law on insurance bad faith.  As previously stated, first-party bad faith is an intentional tort, requiring proof of "an absence of a reasonable basis for denial of policy benefits" and "the knowledge or reckless disregard of the lack of a reasonable basis for denial."  *Dakota, Minn. & E. R.R. Co.*, 2009 S.D. 69, ¶ 17, 771 N.W.2d at 629.  But Allstate emphasizes that "an insurance company . . . may challenge claims which are fairly debatable and will be found liable [for bad faith] only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis."  *Id.*

[¶53.]      In *Bertelsen I*, we concluded that Allstate's legal duty to pay was not fairly debatable after AIG denied worker's compensation coverage.  2009 S.D. 21, ¶ 20, 764 N.W.2d at 500-01 ("Allstate's obligation was clear from the statutory language alone, and an interpretive decision from this Court was not necessary for Allstate to have determined its duty under its policy.").  However, we also concluded that a disputed issue of fact remained regarding Allstate's intent in failing to pay benefits, and we remanded for a new trial.  *Id.* ¶¶ 21-22.  Those factual issues were tried in *Bertelsen II*.

[¶54.]      *Bertelsen I* and *II* should only be understood to mean that upon AIG's denial of the worker's compensation claim, Allstate's *legal duty* was not fairly debatable.  A statute clearly controlled.  However, the question of Allstate's actual

intent in delaying payment was a *factual* matter that was left open should Allstate claim that its breach of duty occurred for reasons other than its legal obligation under the statute. In other words, Allstate remained free to assert factual matters such as negligence in processing the claim, an inadequate proof of loss, or an agreement by the insured to delay payment. What our prior decisions prohibited was an argument that Allstate reasonably believed it had no statutory duty to pay upon AIG's denial of worker's compensation coverage.

*Conclusion*

[¶55.]    We affirm the award of attorney's fees and the court's ruling denying Allstate's motions for judgment as a matter of law on the bad faith and punitive damages claims. The circuit court erred in excluding Allstate's evidence of AIG's acceptance of the worker's compensation claim, and the exclusion of that evidence prejudiced Allstate's ability to defend the bad faith and punitive damages claims. This matter is reversed and remanded for a new trial consistent with this opinion.

[¶56.]    GILBERTSON, Chief Justice, and KONENKAMP, SEVERSON and WILBUR, Justices, concur.